# FLINT RIDGE DEVELOPMENT CO. *v.* SCENIC RIVERS ASSOCIATION OF OKLAHOMA ET AL.

No. 75–510.   Argued April 27, 1976—Decided June 24, 1976*

---

*Together with No. 75–545, *Hills, Secretary of Housing and Urban Development, et al.* v. *Scenic Rivers Association of Oklahoma et al.,* also on certiorari to the same court.

MARSHALL, J., delivered the opinion of the Court, in which all Members joined except POWELL, J., who took no part in the consideration or decision of the cases.

*F. Paul Thieman, Jr.,* argued the cause for petitioners in No. 75–510. With him on the briefs were *Harry A.*

*Rissetto, Edwin Kronfeld,* and *Thomas C. Watson. Howard E. Shapiro* argued the cause for petitioners in No. 75–545. With him on the brief were *Solicitor General Bork, Assistant Attorney General Taft, Deputy Solicitor General Randolph, Carl Strass,* and *K. H. Sauerbrunn.*

*Andrew T. Dalton, Jr.,* argued the cause and filed a brief for respondents in both cases.†

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Today we must decide whether the National Environmental Policy Act of 1969 (NEPA) requires the Department of Housing and Urban Development (HUD) to prepare an environmental impact statement before it may allow a disclosure statement filed with it by a private real estate developer pursuant to the Interstate Land Sales Full Disclosure Act (Disclosure Act) to become effective.

## I

The Disclosure Act, 82 Stat. 590, as amended, 15 U. S. C. § 1701 *et seq.,* is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers. The Act is based on the full disclosure provisions and philosophy of the Securities Act of 1933, 48 Stat. 74, as amended, 15 U. S. C. § 77a *et seq.,* which it resembles in many respects. Section 1404 (a) (1) of the Disclosure Act makes it unlawful for the devel-

---

†Briefs of *amici curiae* urging affirmance in both cases were filed by *Evelle J. Younger,* Attorney General, and *Nicholas C. Yost* and *C. Foster Knight,* Deputy Attorneys General, for the State of California; and by *Toney Anaya,* Attorney General, and *Nicholas R. Gentry,* Assistant Attorney General, for the State of New Mexico.

oper of a covered subdivision "to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails . . . to sell or lease any lot in any subdivision unless a statement of record with respect to such lot is in effect . . . and a printed property report . . . is furnished to the purchaser in advance of the signing of any contract or agreement for sale or lease by the purchaser." 15 U. S. C. § 1703 (a)(1).

The statement of record and the property report, which is a condensed version of the statement of record, are prepared by the developer. They contain information concerning the title of the land; the terms and conditions for disposing of lots; the conditions of the subdivision, including access, noise, safety, sewage, utilities, proximity to municipalities, and the nature of the developer's proposed improvements; various other specified data; and such additional matters "as the Secretary [of HUD] may require as being reasonably necessary or appropriate for the protection of purchasers." § 1406 (12) of the Disclosure Act, 15 U. S. C. § 1705.[1] By regulation, the

---

[1] Section 1406, 15 U. S. C. § 1705, provides in full:

"The statement of record shall contain the information and be accompanied by the documents specified hereinafter in this section—

"(1) the name and address of each person having an interest in the lots in the subdivision to be covered by the statement of record and the extent of such interest;

"(2) a legal description of, and a statement of the total area included in, the subdivision and a statement of the topography thereof, together with a map showing the division proposed and the dimensions of the lots to be covered by the statement of record and their relation to existing streets and roads;

"(3) a statement of the condition of the title to the land comprising the subdivision, including all encumbrances and deed restrictions and covenants applicable thereto;

"(4) a statement of the general terms and conditions, including the range of selling prices or rents at which it is proposed to dispose of the lots in the subdivision;

"(5) a statement of the present condition of access to the sub-

property report is a required part of the statement of record.[2] 24 CFR §§ 1710.20 (a), (e), 1710.110 (1975).

A developer registers a subdivision by filing the state-

division, the existence of any unusual conditions relating to noise or safety which affect the subdivision and are known to the developer, the availability of sewage disposal facilities and other public utilities (including water, electricity, gas, and telephone facilities) in the subdivision, the proximity in miles of the subdivision to nearby municipalities, and the nature of any improvements to be installed by the developer and his estimated schedule for completion;

"(6) in the case of any subdivision or portion thereof against which there exists a blanket encumbrance, a statement of the consequences for an individual purchaser of a failure, by the person or persons bound, to fulfill obligations under the instrument or instruments creating such encumbrance and the steps, if any, taken to protect the purchaser in such eventuality;

"(7) (A) copy of its articles of incorporation, with all amendments thereto, if the developer is a corporation; (B) copies of all instruments by which the trust is created or declared, if the developer is a trust; (C) copies of its articles of partnership or association and all other papers pertaining to its organization, if the developer is a partnership, unincorporated association, joint stock company, or any other form of organization; and (D) if the purported holder of legal title is a person other than developer, copies of the above documents for such person;

"(8) copies of the deed or other instrument establishing title to the subdivision in the developer or other person and copies of any instrument creating a lien or encumbrance upon the title of developer or other person or copies of the opinion or opinions of counsel in respect to the title to the subdivision in the developer or other person or copies of the title insurance policy guaranteeing such title;

"(9) copies of all forms of conveyance to be used in selling or leasing lots to purchasers;

"(10) copies of instruments creating easements or other restrictions;

"(11) such certified and uncertified financial statements of the developer as the Secretary may require; and

"(12) such other information and such other documents and

ment of record, including the property report, with HUD. The statement, which is effective only with respect to the lots specified therein, becomes effective automatically on the 30th day after filing, or on such earlier date as the Secretary may determine. §§ 1405, 1407 (a) of the Disclosure Act, 15 U. S. C. §§ 1704, 1706 (a). If the Secretary determines that the statement of record is on its face incomplete or inaccurate in any material respect, and so notifies the developer within 30 days of filing, the effective date is suspended until 30 days after the developer files the information necessary to complete or correct the report. § 1407 (b) of the Disclosure Act, 15 U. S. C. § 1706 (b).[3] If the statement is on its face complete and accurate, however, it must be permitted to go into effect. The Secretary has no power to evaluate the substance of the developer's proposal; and the Disclosure Act expressly provides: "The fact that a statement of record with respect to a subdivision has been filed or is in effect shall not be deemed a finding by the Secretary that the statement of record is true and accurate on its face, or be held to mean the Secretary has in any way

certifications as the Secretary may require as being reasonably necessary or appropriate for the protection of purchasers."

[2] The information required to be included in a property report is described in § 1408 (a) of the Disclosure Act, 15 U. S. C. § 1707 (a):

"A property report relating to the lots in a subdivision shall contain such of the information contained in the statement of record, and any amendments thereto, as the Secretary may deem necessary, but need not include the documents referred to in paragraphs (7) to (11), inclusive, of section 1406 [15 U. S. C. § 1705]. A property report shall also contain such other information as the Secretary may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of purchasers."

[3] Upon suspension, the developer may request a hearing, which must be held within 20 days. § 1407 (b) of the Disclosure Act, 15 U. S. C. § 1706 (b).

passed upon the merits of, or given approval to, such subdivision." § 1417 of the Disclosure Act, 15 U. S. C. § 1716. Moreover, the Act prohibits any person from advertising or representing that the Secretary approves or recommends the subdivision or the sale or lease of lots therein. §§ 1408 (b), 1417 of the Disclosure Act, 15 U. S. C. §§ 1707 (b), 1716.[4]

Petitioner Flint Ridge Development Co. (Flint Ridge) is a private joint venture organized to develop and sell lots in a subdivision located in northeastern Oklahoma adjacent to the Illinois River. In February 1974, the company filed with HUD a statement of record and property report relating to "Flint Ridge No. 1," which consists of approximately 1,000 residential lots on 2,200 acres of company land. The Secretary found the statement to be inaccurate and incomplete on its face, and suspended its effective date. Flint Ridge subsequently filed corrections and the amended statement became effective on May 2, 1974. Sales of lots commenced immediately thereafter.

Respondents Scenic Rivers Association of Oklahoma and Illinois River Conservation Council are nonprofit Oklahoma corporations organized for the purpose of protecting the Illinois River, a state-designated "scenic" river, and its undeveloped environs, which some members use for recreation. After Flint Ridge filed its statement of record, but before it became effective, respondents petitioned HUD to prepare an environmental impact statement on the development prior to allowing the statement of record to go into effect. HUD rejected the re-

---

[4] The disclosure requirements of the Act are enforceable by both private and Government civil remedies, §§ 1404 (b), 1410, 1415 of the Disclosure Act, 15 U. S. C. §§ 1703 (b), 1709, 1714, and by criminal sanctions, §§ 1415, 1418 of the Disclosure Act, 15 U. S. C. §§ 1714, 1717.

quest and respondents brought suit in the United States District Court for the Eastern District of Oklahoma against the Secretary of HUD and the Administrator of HUD's Office of Interstate Land Sales Registration.[5] Respondents requested a declaratory judgment and an injunction requiring that the defendants "prior to approval and registration of a statement of record and property report, under the Interstate Land Sales Act, conduct an environmental study in compliance with the National Environmental Policy Act [83 Stat. 852, 42 U. S. C. § 4321 *et seq.*] . . . ." Record 593. Respondents also sought a preliminary injunction to require the federal defendants to "[w]ithdraw the approval of the Interstate Land Sales filing for the Flint Ridge Development Company . . . ." *Id.,* at 597–598. The District Court permitted Flint Ridge to intervene as a defendant.

After a hearing, the District Court ruled for the respondents. It found that the requirements of NEPA applied to HUD and that its action in allowing Flint Ridge's statement of record to go into effect constituted major federal action significantly affecting the quality of the human environment so as to require the preparation and filing of an environmental impact statement under NEPA. The court thereupon suspended Flint Ridge's statement of record, prohibited public sale thereunder, ordered the preparation of an environmental impact statement, and enjoined HUD "from approving the . . . filing of Flint Ridge Development Co. until such time as the environmental impact study has been prepared and a public hearing held thereon . . . ." 382 F. Supp. 69, 76 (1974).

On appeal, the Court of Appeals for the Tenth Cir-

---

[5] The District Court dismissed other federal and state agencies named in the complaint as "additional defendants." Record 581, 658.

cuit reversed the District Court's holding that a public hearing was necessary on the environmental impact statement,[6] but affirmed the remainder of the District Court's decision. The Court of Appeals agreed with the District Court that HUD's review of disclosure statements for adequacy constituted major federal action significantly affecting the quality of the human environment within the meaning of NEPA. The real estate development, the court reasoned, would have "substantial consequences to the environment," 520 F. 2d 240, 244 (1975), and those consequences would come about most readily through the interstate sales that federal approval of the disclosure statement would allow.[7] Thus, the court held, this case is similar to those in which federal agencies approve particular projects, license them, or supply funding or financial guarantees.

The Court of Appeals deemed it immaterial to its decision that the purpose of the Disclosure Act was only to provide necessary information to potential buyers and that under the Act the Secretary had only the limited discretion to reject statements of record that were incomplete or inaccurate. These limitations were irrelevant, the court concluded, because "the NEPA impact statement requirement applies to virtually all federal agencies and is not limited to those that are concerned with the environment. One of its purposes is to require the giving of attention to environmental problems regardless

---

[6] Since respondents did not seek certiorari on this ruling, its correctness is not before us. However, because we find that no environmental impact statement was necessary before the Secretary could permit Flint Ridge's statement of record to become effective, a fortiori no hearing on an environmental impact statement was required in this case.

[7] The court recognized that even absent federal approval the project could go ahead so long as the lots were not sold in interstate commerce. 520 F. 2d, at 244.

of whether the agency has authority to do anything about it." *Id.*, at 245 (footnote omitted). Likewise, the court found, it was of no import that the Disclosure Act provides that statements of record become effective within 30 days unless suspended. Although it would take much longer to prepare an impact statement, the 30-day provision was not inconsistent with the court's holding because "[t]here is nothing in the statute . . . which prohibits the agency from suspending a statement of record pending the preparation and filing of an impact statement." *Id.*, at 244. We granted certiorari, 423 U. S. 1013 (1975), and we now reverse.

## II

Section 102 (2)(C) of NEPA, 42 U. S. C. § 4332 (2)(C), requires all agencies of the United States "to the fullest extent possible" to "include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment" an environmental impact statement analyzing the consequences of, and alternatives to, the proposed action.[8] The Secretary and Flint

[8] In pertinent part, § 102, 42 U. S. C. § 4332, provides:

"The Congress authorizes and directs that, to the fullest extent possible . . . (2) all agencies of the Federal Government shall . . .

"(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

"(i) the environmental impact of the proposed action,

"(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) alternatives to the proposed action,

"(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

"(v) any irreversible and irretrievable commitments of resources

Ridge offer essentially two theories for exempting HUD from this duty in the administration of the Disclosure Act.

First, they claim, allowing a disclosure statement to become effective is not major federal action significantly affecting the quality of the human environment within the meaning of NEPA. In petitioners' view, NEPA is concerned only with introducing environmental considerations into the decisionmaking processes of agencies that have the ability to react to environmental consequences when taking action. If the agency cannot so act, its action is not "major" and does not fall within the statutory language. Thus, petitioners urge, NEPA should not be read to impose a duty on HUD to prepare an environmental impact statement in this case since the agency, by statute, has no power to take environmental consequences into account in deciding whether to allow a disclosure statement to become effective. To this respondents counter, as did the Court of Appeals, that NEPA's goals are not so narrow and that even if the agency taking action is itself powerless to protect the environment, preparation and circulation of an impact statement serves the valuable function of bringing the environmental consequences of federal actions to the attention of those who are empowered to do something

---

which would be involved in the proposed action should it be implemented.

"Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes . . . ."

about them—other federal agencies, Congress, state agencies, or even private parties.

Petitioner's second argument is that even if HUD's action in allowing a disclosure statement to become effective constitutes major federal action significantly affecting the quality of the human environment within the meaning of NEPA, HUD is nonetheless exempt from the duty of preparing an environmental impact statement because compliance with that duty is not possible if HUD is also to comply with the Disclosure Act's requirement that statements of record become effective within 30 days of filing, unless incomplete or inaccurate on their face. In response to this claim, respondents contend that the Secretary has an inherent power to suspend the effective date of a statement of record past the 30-day deadline in order to prepare an impact statement. Because we reject this argument of respondents and find that preparation of an impact statement is inconsistent with the Secretary's mandatory duties under the Disclosure Act, we need not resolve petitioners' first contention.

NEPA's instruction that all federal agencies comply with the impact statement requirement—and with all the other requirements of § 102—"to the fullest extent possible," 42 U. S. C. § 4332, is neither accidental nor hyperbolic. Rather, the phrase is a deliberate command that the duty NEPA imposes upon the agencies to consider environmental factors not be shunted aside in the bureaucratic shuffle. This conclusion emerges clearly from the statement of the Senate and House conferees, who wrote the "fullest extent possible" language into NEPA:

"The purpose of the new language is to make it clear that each agency of the Federal Government *shall* comply with the directives set out in [§ 102 (2)] *unless* the existing law applicable to such

agency's operations expressly prohibits or makes full compliance with one of the directives impossible . . . . Thus, it is the intent of the conferees that the provision 'to the fullest extent possible' shall not be used by any Federal agency as a means of avoiding compliance with the directives set out in section 102. Rather, the language in section 102 is intended to assure that all agencies of the Federal Government shall comply with the directives set out in said section 'to the fullest extent possible' under their statutory authorizations and that no agency shall utilize an excessively narrow construction of its existing statutory authorizations to avoid compliance." 115 Cong. Rec. 39703 (1969) (House conferees) (emphasis added).

See *id.*, at 40418 (Senate conferees). See also 40 CFR § 1500.4 (a) (1975).

Section 102 recognizes, however, that where a clear and unavoidable conflict in statutory authority exists, NEPA must give way. As we noted in *United States* v. *SCRAP,* 412 U. S. 669, 694 (1973), "NEPA was not intended to repeal by implication any other statute." And so the question we must resolve is whether, assuming an environmental impact statement would otherwise be required in this case, requiring the Secretary to prepare such a statement would create an irreconcilable and fundamental conflict with the Secretary's duties under the Disclosure Act.

The Disclosure Act provides that a statement of record becomes effective automatically 30 days after filing unless the Secretary acts affirmatively, within that time, to suspend it for inadequate disclosure. 15 U. S. C. § 1706.[9] It is inconceivable that an environmental im-

---

[9] Compare § 8 (a) of the Securities Act of 1933, 15 U. S. C. § 77h (a), which provides that the registration statement for a

pact statement could, in 30 days, be drafted, circulated, commented upon, and then reviewed and revised in light of the comments.[10] Respondents do not contend otherwise. Rather, they take the position, accepted by the Court of Appeals, that the statute does not preclude the Secretary from suspending the effective date of the proposed statement for such time as is necessary to prepare an impact statement.[11]

We find, to the contrary, that the Disclosure Act leaves

---

securities offering becomes effective within 20 days after it is filed, in the absence of a delaying amendment by the registrant or a stop order proceeding by the Securities and Exchange Commission.

[10] Draft environmental impact statements on simple projects prepared by experienced personnel take some three to five months to complete, at least in the Department of the Interior. Complex projects prepared by inexperienced personnel may take up to 18 months to prepare. Sixth Annual Report, Council on Environmental Quality (CEQ) 639 (1975).

Once a draft statement is prepared, CEQ guidelines provide that "[t]o the maximum extent practicable" no action should be taken sooner than 90 days after a draft environmental impact statement (and 30 days after the final statement) has been made available for comment. 40 CFR § 1500.11 (b) (1975). Agencies commenting on a draft statement are to have at least 45 days to make their comments. 40 CFR § 1500.9 (f) (1975).

[11] Respondents also contend that HUD's own guidelines require it to prepare an impact statement before a disclosure statement becomes effective under the Disclosure Act. This claim is spurious. The document on which respondents rely, HUD Handbook 1390.1, the Handbook of Departmental Policies, Responsibilities and Procedures for Protection and Enhancement of Environmental Quality, 38 Fed. Reg. 19182 *et seq.* (1973), amended 39 Fed. Reg. 38922 (1974), by its own terms does not apply to registrations under the Disclosure Act. Section 1 of the handbook states that its provisions apply to "HUD legislative proposals, policy and guidance documents (including guides, regulations, handbooks, circulars, technical standards, etc.) and individual project approval actions on insurance, loans and grants, subsidies and demonstration projects." 38 Fed. Reg. 19182 (1973). Subdivision registrations do not fall within any of these categories.

the Secretary no such discretion. The Act mandates that "[e]xcept as hereinafter provided, the effective date of a statement of record . . . *shall* be the thirtieth day after the filing thereof . . . ." § 1407 (a), 15 U. S. C. § 1706 (a) (emphasis added). The only exception to this mandatory command that is "hereinafter provided" is the power granted the Secretary to suspend the effective date of a statement "[i]f it appears to the Secretary that a statement of record . . . is on its face incomplete or inaccurate in any material respect . . . ." § 1407 (b), 15 U. S. C. § 1706 (b).[12] Thus, while the Secretary may unquestionably suspend an effective date in order to allow the developer to remedy an inadequate disclosure statement, there is no basis in the statute to allow the Secretary to order such a suspension so as to give HUD time to prepare an impact statement.

Not only does the Court of Appeals' opinion grant the Secretary a power not conferred by statute, but the exer-

---

[12] Sections 1407 (c) and (d) grant the Secretary the additional power to suspend already effective statements of record, but do not expand upon the Secretary's limited discretion to extend the time requirements of the Act.

Under § 1407 (d), the Secretary may suspend an already effective statement, after notice and hearing, only if the Secretary determines that it includes an untrue statement of a material fact or omits to state any material fact necessary to make the statement not misleading. 15 U. S. C. § 1706 (d).

Under § 1407 (c), upon receipt of an amendment to a statement of record, the Secretary may, if the Secretary determines "such action to be necessary or appropriate in the public interest or for the protection of purchasers," suspend the statement of record until the amendment becomes effective. 15 U. S. C. § 1706 (c). While this provision gives the Secretary greater flexibility in deciding whether to suspend a statement of record, it does not affect the Act's time limits. The amendment must become effective within 30 days unless it is inaccurate or incomplete. § 1407 (a) of the Disclosure Act, 15 U. S. C. § 1706 (a).

cise of that power ordered by the court would contravene the purpose of the 30-day provision of the Disclosure Act. The 30-day time limit, as the Court of Appeals recognized, is designed to protect developers from costly delays as a result of the need to register with HUD. Yet, the Court of Appeals' reading of the statute would make such delays commonplace, and render the 30-day provision little more than a nullity. Environmental impact statements, and consequent lengthy suspensions, would be necessary in virtually all cases.[13]

In sum, even if the Secretary's action in this case constituted major federal action significantly affecting the quality of the human environment so that an environmental impact statement would ordinarily be required, there would be a clear and fundamental conflict of statutory duty. The Secretary cannot comply with the statutory duty to allow statements of record to go into effect within 30 days of filing, absent inaccurate or incomplete disclosure, and simultaneously prepare impact statements on proposed developments. In these circumstances, we find that NEPA's impact statement requirement is inapplicable.

---

[13] It is no answer to suggest, as respondents do, that the limit could be met if the Secretary ordered the developer not to file its statement of record until HUD completed an environmental impact statement. This proposal is no more than a circumvention of the statute's language, and is equally violative of its purpose.

The Court of Appeals alternatively suggested that "a developer could give advance notice to HUD of its intent to sell land in interstate commerce, whereby HUD could commence the preparation of its impact statement." 520 F. 2d, at 244. This suggestion would still not allow compliance with the 30-day rule. The agency could not fruitfully begin the impact statement until the developer's plans were fully or largely worked out—at which time the developer would be virtually ready to file his disclosure statement and begin sales.

This is not to say that environmental concerns are irrelevant to the Disclosure Act or that the Secretary has no duties under NEPA. Section 1406 (5) of the Disclosure Act recognizes that disclosure of some of the environmental aspects of a subdivision is necessary to protect prospective purchasers and requires such disclosure in the statement of record and property report. 15 U. S. C. § 1705 (5). The developer must provide information on such factors as roads, water, sewage, drainage, soil erosion, climate, nuisances, natural hazards, municipal services, and zoning restrictions. Moreover, §§ 1406 (12) and 1408 (a) confer on the Secretary authority to require "other information" from developers in their statements of record and property reports, both for the "protection of purchasers" and "in the public interest." [14]  Therefore, if the Secretary finds it necessary for the protection of purchasers or in the public interest, the Secretary may adopt rules requiring developers to incorporate a wide range of environmental information into property reports to be furnished prospective purchasers; and respondents may request the Secretary to institute a rulemaking proceeding to consider the desirability of ordering such disclosure. 5 U. S. C. § 553 (e).

Because the courts below erred in ordering the Secretary to prepare an impact statement before allowing

---

[14] Section 1406 (12) only gives the Secretary the power to order the inclusion in statements of record of information necessary for "the protection of purchasers." See n. 1, supra. However, § 1408 (a) allows the Secretary to order the inclusion in property reports of information necessary for "the protection of purchasers" or "in the public interest." See n. 2, supra. Since, by regulation, the property report must be included in the statement of record, 24 CFR §§ 1710.20 (a), (e), 1710.110 (1975), information necessary "in the public interest" may, in effect, be required in the statement of record as well.

Flint Ridge's statement of record to go into effect, the judgment of the Court of Appeals for the Tenth Circuit is reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of these cases.