**ENVIRONMENTAL DEFENSE FUND, INC., et al., Plaintiffs,**

v.

**Brock ADAMS, Secretary of Transportation, et al., Defendants.**

**Civ. A. No. 74–340.**

United States District Court, District of Columbia.

June 21, 1977.

John F. Hellegers, Washington, D.C., Peter L. Koff, Boston, Mass., for plaintiffs.

Gary B. Randall, U.S. Dept. of Justice, Washington, D.C., Edward S. Faggen, Federal Aviation Administration, Washington, D.C., for defendants.

### MEMORANDUM

SIRICA, District Judge.

Under Section 4 of the Airport and Airway Development Act Amendments of 1976, 49 U.S.C.A. § 1712(i) (Supp. 1977), the Secretary of Transportation ("Secretary") must, by January 1, 1978, prepare and publish a major revision of the National Airport System Plan for the development of public airports in the United States. The plaintiffs—the Environmental Defense Fund and the City of Boston, Massachusetts—claim that under 42 U.S.C. § 4332(2)(C) (1970), an environmental impact statement must accompany the revision.[1] The Secretary disagrees.

### I

### A

In order to resolve this dispute, the Court must ascertain the nature of two separate obligations that Congress has imposed on the Secretary and their relationship to one another.

The first of these obligations is that the Secretary prepare a National Airport System Plan.[2] This requirement is contained in the Airport and Airway Development Act, 49 U.S.C. §§ 1701 et seq. (1970), as amended, 49 U.S.C.A. §§ 1701 et seq. (Supp. 1977). The purpose of this Act is to aid the development of a nationwide network of airports in order to meet the growing demands of interstate commerce, the Postal Service, and the national defense. 49 U.S.C.A. § 1701 (Supp. 1977). The means chosen to do this is to subsidize to certain percentage limits worthy airport development projects which a locality has proposed to undertake.[3]

The National Airport System Plan's function is to aid the Secretary in determining which projects are worthy of federal support and which are not. For, although Congress has set general geographic guidelines for apportioning much of the subsidies, all awards must clearly be guided by and consistent with the Plan. E.g., 49 U.S.C.A. §§ 1714(a), 1715(b)(2) (Supp. 1977).

---

1. The plaintiff Environmental Defense Fund originally brought this suit in 1974, alleging deficiencies in the government's preparation and revision of the National Airport System Plan as required under the original Airport and Airway Development Act of 1970, 49 U.S.C. §§ 1701 et seq. (1970). But after the Act was amended, the parties agreed to limit the dispute to the revision due by January, 1978.

2. The requirement for a National Airport System Plan in the Act replaced a provision for a somewhat similar plan in the Federal Airport Act, 60 Stat. 171. See H.R.Rep.No.601, 91st Cong., 1st Sess. 58–59 (1967).

3. The subsidies are made from a trust funded generally by taxes on airport use.

The Act states quite specifically what the revised Plan is to contain. The Secretary is to set forth his judgment on all the following matters:

(1) What level and kind of airport service will interstate commerce, the Defense Department, and the Postal Service demand during the succeeding ten-year period [49 U.S.C.A. § 1712(a), (i) (Supp. 1977)];

(2) What specific airports are needed to fulfill this demand; what will be each airport's role in the system—that is, what will be its level of demand and what kinds of aircraft should be used to meet that demand [49 U.S.C.A. §§ 1712(a), (i), 1716(a) (Supp. 1977)];

(3) In general, what kind and level of development will, in the Secretary's view, be necessary for each airport to fulfill its designated role in the system during the next ten years [49 U.S.C.A. § 1712(i) (Supp. 1977)];

(4) What will be the cost, "sufficiently accurate so as to be capable of being used for future year apportionments," of the projected development needed [49 U.S.C.A. § 1712(a), (i) (Supp. 1977)].

Much of the information necessary to make these judgments, including information on environmental concerns, is intended to come from consultation with other federal officials, 49 U.S.C. § 1712(c)–(g) (1970), and also from the work the Secretary has already done on related projects, such as the statement on national transportation policy that was required by 49 U.S.C.

§ 1702. But, as the Secretary has readily conceded, a great deal of the information is to come from local system plans developed by state and regional officials. 49 U.S.C.A. § 1713(a) (Supp. 1977).

In short, then, Congress has required the Secretary to put together, from a number of different sources, a plan that will serve as a basis "for determining the fiscal and physical needs of an airport *system*," and for developing airports in a planned, orderly way nationwide. H.R.Rep.No.594, 94th Cong., 1st Sess. 14, 37 (1975) (emphasis in original).

B

The second obligation that Congress has imposed on the Secretary is the general one to prepare environmental impact statements in certain circumstances. This requirement is contained in the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* (1970), which is perhaps the primary reflection of Congress's great concern with preserving the environmental quality of the country. Section 4332(2)(C) is one of the principal tools for achieving this end. Basically, it requires that in "every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of the human environment," the responsible federal official include a detailed statement of the proposal's likely effects and of the possible alternatives available.[4] Federal agencies must comply with this requirement "to the fullest extent possible." Therefore, if the conditions con-

---

4. Section 4332(2)(C) of title 42 provides, more fully, as follows:

The Congress authorizes and directs that, to the fullest extent possible . . . (2) all agencies of the Federal Government shall—

\* \* \* \* \* \*

(C) include in every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed *statement*, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. . . .

In another section, the National Environmental Policy Act established the Council on Environmental Quality. 42 U.S.C. § 4342 (1970).

tained in the provision are all met, an impact statement conforming to 42 U.S.C. § 4332(2)(C) must be prepared, unless "a clear and unavoidable conflict in statutory authority exists." *Flint Ridge Development Co. v. Scenic Rivers Association of Oklahoma,* 426 U.S. 776, 788, 96 S.Ct. 2430, 2438, 49 L.Ed.2d 205 (1976).

C

The Secretary has not argued, and this Court does not believe he could, that the Airport and Airway Development Act contains any "clear and unavoidable conflict" with 42 U.S.C. § 4332(2)(C). The issue in this dispute, then, is whether § 4332(2)(C) itself requires that such a statement must be prepared.

As that statute indicates, three conditions must be present for an environmental impact statement to be necessary:

(1) There must be a recommendation or report on a proposal;

(2) The proposal must be for major federal action;

(3) The federal action must significantly affect the quality of the human environment.

The Secretary does not claim that the revised Plan, if put into effect, would have only insignificant environmental consequences. Indeed, he could not, because Congress has specifically provided that, in preparing the revision, the Secretary consult with the Departments of the Interior, of Health, Education and Welfare, and of Agriculture, and with the Council on Environmental Quality, on the preservation of the environment, and that he adjust the Plan, to the extent he determines feasible, to meet their recommendations. 49 U.S.C. § 1712(f).[5] Certainly, this indicates the view of Congress that implementation of the revision would have significant environmental consequences.

Nor, for obvious reasons, does the Secretary argue that implementing the revised Plan would be only a minor federal action: The plan will provide for the expenditure of billions of federal tax dollars for radical changes in air transportation.

Rather, the Secretary argues only that the Plan is not a "recommendation or report" for which an impact statement is required. It is not clear exactly how a Court is to address this problem, but the Supreme Court in *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976) has indicated that a two-part test is appropriate:

(1) The document must contain a "proposal"—that is, a goal toward which the responsible federal official intends to direct his energies. *Kleppe,* at 405–06, 96 S.Ct. 2718.

(2) The proposal must have well-enough defined geographic, temporal and subject matter limits so that the official can meaningfully address the questions posed in 42 U.S.C. § 4332(2)(C). *Id.,* at 401–02, 96 S.Ct. 2718.

It is fairly clear from the outline of what the Plan must contain, given in Part IA, above, that the revised Plan will fulfill the second part of this test. It will be of national scope, for a ten-year time span, and will outline in fair detail the airport development appropriate for the federal "system." In fact, Congress has itself indicated that the revised Plan will be well-enough defined to make an impact statement worthwhile. For, as noted above, in preparing the revision, the Secretary must try to incorporate the views of other federal officials on environmental matters. 49 U.S.C. § 1712(f). In order to do this, he

5. That section provides as follows:

In carrying out this section [requiring the preparation of the initial National Airport System Plan and revisions to it] the Secretary shall consult with and consider the views and recommendations of the Secretary of the Interior, and Secretary of Health, Education, and Welfare, the Secretary of Agriculture, and the National Council on Environmental Quality. The recommendations of [these officials] with regard to the preservation of environmental quality, shall, to the extent that the Secretary of Transportation determines to be feasible, be incorporated in the national airport system plan.

obviously must be able to undertake an analysis similar to that required for an impact statement.[6]

It is with regard to the first test, however, that the Secretary makes his strongest argument—that so many contingencies stand in the way of the Plan's ever being fully realized that it cannot fairly be said to contain a "proposal." On the contrary, he claims, it is simply a starting point for discussion.

Of course, there are many contingencies present here—such as the possibility that the Secretary might change his mind about a particular portion of the Plan, or that federal funds might become unavailable—which would apply to many proposals for which an impact statement would clearly be required. For example, despite these possibilities, an environmental impact statement is no doubt required for building a dam.

The Secretary has implicitly recognized this. Therefore, he has relied most heavily on the fact that he must await a particular application from the local agency operating an airport before awarding any subsidy for development. Any number of circumstances out of the Secretary's control, then, could persuade a locality to deviate substantially from the Plan as it exists at any given time. If only a few localities did this, then the way airports in the system actually develop may be substantially different from the way they are envisioned in the Plan at any given time.

Several factors, however, diminish the force of this argument. First is that the Plan is developed in large part from the plans of localities. In fact, as the Secretary has conceded, the National Plan's projections for a particular area tend to follow quite closely those of the locality. Therefore, inclusion of possible general development in the National Plan is itself a fair indication of each locality's intention to proceed with development along those lines. Second, the federal subsidies are quite attractive—75 percent to over 90 percent of allowable costs for fiscal years 1976 through 1980, depending on the kind of airport. 49 U.S.C.A. § 1717 (Supp. 1977). This is a substantial incentive to the localities to include in their plans all the general development they foresee as necessary and to continue forward in accordance with the National Plan.

The precise issue to be decided in this case, therefore, comes down to this: Does this limited contingency mean that the revised Plan will contain something less than a "proposal" for which an impact statement is required.

As indicated in Part IA, above, it is clear that Congress thought it did not. The revised Plan is to serve as the primary basis for developing in an orderly way a system of airports to satisfy our national needs. The Secretary is to award subsidies in accordance with the revision as it exists at any given time, despite any changes a locality may decide on later. The Plan, therefore, will have all the earmarks of a goal toward which the Secretary is to devote his energies. Accordingly, the Court finds that the revised Plan will contain a "proposal" for which an environmental impact statement is required.[7]

## II

But to say that an environmental impact statement is required does not end the inquiry. Certain circumstances peculiar to the revision of the Plan limit the kind and extensiveness of the impact statement required. See Aberdeen & Rockfish R. Co. v. SCRAP, 422 U.S. 289, 322, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975).

---

6. It is true that in the past federal officials have not made substantial recommendations for the Plan. But this does not affect the judgment Congress evidently made that the Secretary would at this stage be able to make a full environmental review should he be called upon to do so.

7. The Court finds some additional support for this conclusion in Congress's use of the word "plan" in "National Airport System Plan." That word is often used interchangeably with a "report or recommendation" for which an impact statement is required. E. g., Kleppe v. Sierra Club, 427 U.S. 390, 400–02, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

The first of these is that the Act envisions a two stage process: (1) preparation of a National Airport System Plan, and (2) subsidization of development projects in accordance with the Plan. The Secretary has from the beginning prepared environmental impact statements at the second stage for subsidies that might have significant environmental consequences. Since, at the award stage, the Secretary has a specific application before him, and is therefore much better able to address the environmental problems, there would be little sense in requiring an impact statement at the planning stage which would cover the same ground. To the extent that local and regional problems will be adequately discussed in these later impact statements, then, these problems need not be discussed beforehand in the statement accompanying the National Plan.

The second limiting factor is that the revision is due by January 1, 1978, a little more than six months from now. Environmental impact statements often take a good deal longer than this to prepare fully. See *Flint Ridge Development Co. v. Scenic Rivers Association*, 426 U.S. 776, 789 n. 10, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976). Therefore, the Secretary may very well have to compromise somewhat on the completeness of the impact statement in order to have the revision published by January of next year.[8]

Both of these circumstances raise substantial questions—What matters are best left to a local impact statement? What compromises in the statement should be made so that the revised Plan will be ready on time? But these are problems which are best left to the sound discretion of the Secretary, who is entrusted by statute with the responsibility of revising the Plan, and who has the aid of an expert staff. It would be inappropriate, therefore, for the Court to provide any more guidance in the matter.

### III

Accordingly, with the limitations mentioned, the motion of the plaintiffs for summary judgment must be granted.

---

8. The parties have not raised the problem of what obligations the Secretary might have to expand on the environmental impact statement after the revised Plan is published.