The DETROIT EDISON COMPANY, Petitioner,

Public Service Co. of Indiana, Inc., Intervenor,

National Association of Regulatory Utility Commissioners, Petitioner,

v.

UNITED STATES NUCLEAR REGULATORY COMMISSION and United States of America, Respondents.

Nos. 78–3187, 78–3196.

United States Court of Appeals, Sixth Circuit.

Argued June 17, 1980.

Decided Sept. 5, 1980.

Rehearing and Rehearing En Banc Denied Oct. 22, 1980.

Harry H. Voigt, Michael F. McBride, Le-Boeuf, Lamb, Leiby & MacRae, Washington, D. C., for petitioner in No. 78–3187 and for intervenor.

Charles W. Campbell, Plainfield, Ind., for intervenor in No. 8–3187.

Peter A. Marquardt, Detroit, Mich., for petitioner in No. 78–3187.

Stephen S. Ostrach, Sheldon L. Trubatch, U. S. Nuclear Regulatory Comm., Washington, D. C., for respondents in Nos. 78–3187 and 78–3196.

Paul Rodgers, William R. Nusbaum, Nat. Ass'n of Regulatory Utility Commissioners, Charles Gray, Washington, D. C., for petitioner in No. 78–3196.

Stephen F. Eilperin, U. S. Nuclear Regulatory Comm., Washington, D. C., Griffin B. Bell, Atty. Gen. of U. S. Dept. of Justice, James W. Moorman, Edward Shawaker, Anne S. Almy, Washington, D. C., for respondents.

Before BROWN, MARTIN, and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This care requires us to rule on the Nuclear Regulatory Commission's[1] present practice of regulating the location of electric transmission lines constructed in connection with proposed nuclear power facilities. We must determine whether or not the Commission's policy of conditioning approval of license applications on environmentally acceptable routing of transmission lines[2] exceeds the agency's authority under the Atomic Energy Act, 42 U.S.C. § 2011 et seq. and the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (NEPA).

The Commission's position on transmission line regulation has evolved over the past decade. Prior to the 1969 enactment of NEPA, the Commission perceived its duties under the Atomic Energy Act primarily in terms of protecting the public from radiation hazards. NEPA, however, made "environmental protection a part of the mandate of every federal agency and department . . . [The Commission] is not only permitted, but compelled, to take environmental values into account" in carrying out its regular functions. *Calvert Cliffs Coordinating Committee v. AEC*, 449 F.2d 1109, 1112 (D.C.Cir. 1971). Under NEPA, federal agencies must "use all practicable means" to avoid environmental "degradation" to the extent consistent with "other essential considerations of national policy." 42 U.S.C. § 4331(b). Thus, in the early 1970's the Commission began to consider the environmental implications of proposed nuclear facilities.[3]

By 1974, the Commission had adopted an aggressive approach to its environmental responsibilities in the context of transmission line siting. In that year, the Commission's Atomic Safety and Licensing Appeal Board ruled that the Commission could, as a condition of licensure, insist that off–site transmission lines built solely to serve a nuclear facility be designed to minimize environmental disturbance. *Detroit Edison* (Greenwood Energy Center, Units 2 and 3) ALAB–247, 8 A.E.C. 936 (*Greenwood*).

The response to *Greenwood* among utility companies and local utility regulatory bodies was immediate. Public Service Company of Indiana and Detroit Edison Company filed a petition for rule–making pursuant to Section 2.802 of the Commission's Rules of Practice. The proposed rule would have amended 10 C.F.R., Part 50, "Licensing of Production and Utilization Facilities," by excluding transmission lines and other off–site construction from the Commission's

---

1. In 1974, licensing and related regulatory functions of the Atomic Energy Commission were transferred to the Nuclear Regulatory Commission. See Energy Reorganization Act of 1974, 42 U.S.C. § 5801 et seq. References in this opinion to "the Commission" may therefore indicate either agency.

2. We are concerned throughout this opinion with "off–site" transmission lines, defined as that section of line between the plant site boundary and the first point of connection with an existing or planned high voltage system.

3. See 10 C.F.R. 50.10(e)(1)(iv), 37 *Fed.Reg.* 5745 (March 21, 1972); *Tennessee Valley Authority* (Brown's Ferry Nuclear Plant, Units 1, 2, 3) 6 A.E.C. 3 (January 22, 1973).

regulatory ambit.[4] Under the proposal, the Commission could continue to "consider" the probable environmental effects of transmission lines, but could no longer compel the use of an alternative route as a condition of licensure. When notice of Detroit Edison's petition appeared in the Federal Register, eleven parties, including the National Association of Regulatory Utility Commissioners, filed comments in support of the proposal. The Commission nonetheless denied the petition for rulemaking on February 23, 1978, and Detroit Edison filed a petition for review in this court.

The legal issue before us is essentially jurisdictional. Does the Commission have statutory authority to use its licensing power as a means of mitigating the adverse environmental effects of off–site transmission line construction? If so, what is the source of that authority–the Atomic Energy Act, NEPA, or both?

Petitioners insist that neither the Atomic Energy Act nor NEPA empowers the Commission to regulate off–site transmission lines. They contend, first that the Atomic Energy Act limits the Commission's regulatory jurisdiction to matters of nuclear safety significance, national defense and security, and certain antitrust questions. In the absence of a showing that electric power lines fall into any of these categories, petitioners conclude that the Commission has exceeded its statutory authority. In support of this argument, they cite Sections 271 and 274(k) of the statute as evidence that Congress intended to reserve the power to regulate transmission lines to state and local agencies. Second, petitioners contend that NEPA confers no substantive jurisdiction on federal agencies. They acknowledge that NEPA permits agencies to "consider" environmental values as part of the decision–making process; they deny, however, that it authorizes active "regulation" beyond the confines of the agencies' organic statutes.

The Commission, on the other hand, argues that the Atomic Energy Act and NEPA represent independent sources of authority to regulate transmission lines. According to this interpretation, Section 101 of the Atomic Energy Act, 42 U.S.C. § 2131, permits the Commission to assert jurisdiction over transmission lines as "important component parts" of a nuclear "utilization facility." Furthermore, the Commission claims, NEPA itself requires federal agencies to use whatever power they possess to implement national environmental policy. A congressional directive to "consider" environmental factors is meaningless unless agencies can also act to minimize the environmental damage attributable to their licensees.

■ For the reasons discussed below, we find: 1) that the regulation of off–site transmission lines is within the Commission's authority under Section 101 of the Atomic Energy Act; and 2) that nothing in the Atomic Energy Act precludes the Commission from implementing, through the issuance of conditional licenses, NEPA's environmental mandate. We need not, and do not, decide whether NEPA is an independent source of substantive jurisdiction.

In *Public Service Company of New Hampshire v. United States Nuclear Regulatory Commission*, 582 F.2d 77 (1st Cir.), cert. denied, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978), the petitioners challenged a Commission order to reroute transmission lines tying the proposed Seabrook Nuclear Power Station to an existing transmission grid. The rerouting order was based on the Commission's decision to preserve a natural area of forest and marshland. In a thoughtful and persuasive opinion, the First Circuit denied the petition for review, basing its conclusion on a finding that the Commission's order was a proper exercise of jurisdiction under the Atomic Energy Act.

---

4. Petitioners' proposed rule reads:

The provisions of paragraphs (c) and (d) of this section shall not be deemed to prohibit any off- site construction activities including, but not limited to, construction of transmission lines. Further, paragraph (e) of this section shall not be deemed to authorize the Director of Nuclear Reactor Regulation to either authorize or prohibit any such off–site construction activities.

■ Section 101 of the Atomic Energy Act, 42 U.S.C. § 2131, authorizes the Commission to license and regulate the use of a nuclear "utilization facility." 42 U.S.C. § 2014 defines "utilization facility" in part as ". . . (2) any important component part especially designed for such equipment or device *as determined by the Commission.*" (emphasis added). Thus, Congress delegated broad authority to the Commission to define, on the basis of its own experience and expertise, the phrase "component parts" of a "utilization facility." *Public Service Co., supra,* at 82–83. This assertion of jurisdiction is entitled to judicial deference. *Power Reactor Co. v. Electricians,* 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961).

Petitioners' arguments that the Commission has overreached its authority consist largely of citations from the Atomic Energy Act's legislative history and subsequent judicial comments on the statute generally. The message, apparently, is that the Commission's primary function is to protect the public from radiological hazards. Beyond this, petitioners offer only the unsupported assertion that transmission lines are unrelated to nuclear safety. On that evidence alone, without further development of either the legal or factual bases of their argument, petitioners ask us to hold that a long-standing regulatory policy is "so contrary to the purposes of the . . . statute as to warrant intervention and correction by this court." *Public Service Co., supra,* at 83.

The disputed exercise of jurisdiction is based on the Commission's interpretation of a statute which is "virtually unique in the degree to which broad responsibility is reposed in the administrative agency, free of close prescription in its charter as to how it shall proceed in achieving the statutory objectives." *Siegel v. AEC,* 400 F.2d 778, 783 (D.C.Cir. 1968). The Commission's policy has been approved by at least two federal appellate courts–explicitly in *Public Service Co., supra,* and implicitly in *Culpepper League for Environmental Protection v. NRC,* 574 F.2d 633 (D.C.Cir. 1978).[5] Finally, we read with approval the First Circuit's discussion of the eloquence of congressional silence in matters concerning the Commission. *Public Service Co., supra,* at 83–84. Against the weight of this authority, we have only the petitioners' unsupported statement that transmission lines are so irrelevant to the Atomic Energy Act that their regulation constitutes an abuse of agency discretion. We are simply unpersuaded by that argument.

■ We turn now to petitioners' claim that Sections 271 and 274(k) [6] of the Atomic Energy Act prohibit the Commission from assuming jurisdiction over off–site transmission lines. Petitioners interpret those provisions to mean that Congress has reserved exclusive control over transmission lines to state and local agencies. We disagree. The statutory language merely ensures that the authority of other agencies will continue, unimpaired by the provisions of the Atomic Energy Act. Nowhere does it suggest that the regulatory field is completely closed to the Commission. The First Circuit in *Public Service Co., supra,* at 84–85, analyzed the legislative history of Section 271 and concluded that the provision is merely a "garden variety nonpreemption clause." Our study of the record here convinces us that the same description applies to Section 274(k).

5. In *Culpepper League* the court decided the substantive issue–whether the Commission erred in failing to direct an applicant to use an alternative transmission route–without questioning the Commission's authority to order such a change.

6. Section 271 reads:
Nothing in this chapter shall be construed to affect the authority or regulations of any Federal, State, or local agency with respect to the generation, sale, or transmission of electric power produced through the use of nuclear facilities licensed by the Commission:

Provided, That this section shall not be deemed to confer upon any Federal, State, or local agency any authority to regulate, control, or restrict any activities of the Commission.
42 U.S.C. § 2018.
Section 274(k) reads:
Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.
42 U.S.C. § 2021(k).

Finally, in light of our previous findings, we uphold the Commission's practice of conditioning licenses on the use of a Commission–approved transmission route. "The directive to agencies to minimize all unnecessary adverse environmental impact . . . [remains] except when specifically excluded by statute or when existing law makes compliance with NEPA impossible." *Public Service Co., supra,* at 81; *Calvert Cliffs Coordinating Committee, supra,* at 1115; *Flint Ridge Development Co. v. Scenic Rivers Association,* 426 U.S. 776, at 787–788, 96 S.Ct. 2430, at 2437, 2438, 49 L.Ed.2d 205 (1976). In this case, we have found no statutory conflict which might prevent the Commission from complying fully with both the Atomic Energy Act and NEPA. The Commission is empowered by its organic statute to regulate off–site transmission lines; in the exercise of that power it must pursue the objectives of the Atomic Energy Act and NEPA simultaneously. Under the Atomic Energy Act, the Commission can issue conditional licenses for regulatory purposes. There can be no objection to its use of the same means to achieve environmental ends as well. *Public Service Co., supra,* at 85–86.

The petition for review is dismissed.