**In re: OPERATION OF THE MISSOURI RIVER SYSTEM LITIGATION**

**No. 03–MD–1555 (PAM).**

United States District Court, D. Minnesota.

Feb. 26, 2004.

Daniel H. Israel, Boulder, CO, Lisbeth Jane Nudell, Nudell Law Office, Joan Humes, US Attorney, Mpls, MN, Charles M. Carvell, Atty General's Office, Bismarck, ND, David D. Cookson, Nebraska Atty General's Office, Donald G. Blankenau, Thomas R. Wilmoth, Fennemore Craig PC, Lincoln, NE, Jimmy A. Rodriguez, US Dept. of Justice, Washington, DC, for Intervenor Plaintiffs.

Anne E. Mahle, Brian Boru O'Neill, Peter C. Hennigan, Richard A. Duncan, Faegre & Benson, Mpls, MN, Cassandra Sturkie, David A. Becker, David J. Hayes, Janice M. Schneider, Julia A. Hatcher, Latham & Watkins, Sam Kalen, Van Ness

Feldman PC, Timothy D. Searchinger, Environmental Defense, Washington, DC, for Intervenor.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on a Motion for Amendment of the October 1, 2003, Scheduling Order filed by Defendants U.S. Army Corps of Engineers ("Corps") and the Fish and Wildlife Service ("FWS").

In 1944, Congress enacted the Flood Control Act ("FCA"), which provided for the management of the Missouri River and its reservoirs. Pub.L. No. 78–534, 58 Stat. 887 (1944). The Act delegated the responsibility of managing the river basin to the Corps. The core function of the FCA was to control flooding and maintain downstream navigation. *ETSI Pipeline Project v. Missouri,* 484 U.S. 495, 512, 108 S.Ct. 805, 98 L.Ed.2d 898 (1988); *see also* H.R. Doc. No. 475, 78th Cong., 2d Sess. 28–29 (1944); S. Doc. No. 247, 78th Cong.2d Sess. 3 (1944). Because the FCA only identified the broad goals for the river's operation, a more detailed plan was promulgated to aid the Corps in river management. The Missouri River Main Stem Reservoir System Reservoir Regulation Manual ("Master Manual") specifically explains how the Corps must conduct its operation of the Missouri River. The first Master Manual was developed more than 40 years ago and it has been revised three times, in 1973, 1975, and 1979. The Corps, on its own initiative, began revising the 1979 Manual in the late 1980s. For fifteen years, the various interests in the Missouri River basin have eagerly awaited the Corps' completion of its revisions to the Master Manual. Despite repeated promises that a new Master Manual is forthcoming, the Corps has continually failed to complete it.

Revising and issuing a new Master Manual is a lengthy process that requires the Corps to comply with significant regulations and procedures. In particular, the Corps must work closely with various agencies so that all river interests are adequately considered. Prior to the revision of a new Master Manual, the Corps must issue a Final Environmental Impact Statement ("EIS"). The Corps claims that it has been unable to issue a new Master Manual because it has been unable to issue a Final EIS and conduct a review period. Now, in its Motion to the Court, the Corps insists that a Final EIS is completed, but because it is so "voluminous," it is impossible to publish it before February 27, 2004. As a result, the 30–day review period will begin on March 5, 2004 and end on April 5, 2004. Within 10 days of the completion of this review period, the Corps contends that it will be able to issue a new Master Manual. However, in a footnote, the Corps claims to "reserve the right" to extend time again. (Defs.' Mem. in Supp. of Mot. to Amend at 3.)

Plaintiffs North Dakota and American Rivers and Environmental Defense, et al. ("American Rivers") outline, with reference to the administrative record, many of the Corps' illusory assurances to revise the Master Manual over the last fifteen years. (*See* North Dakota Mem. in Supp. of Partial Summ. J. at 4–6; American Rivers Opp'n. Mem. to Federal Defs.' Summ. J. at 3–4.) Because the Corps fails to address any of the substantive arguments set forth in any of the Motions, the Court is inclined to accept these factual assertions.

In November 1989, Assistant Secretary of the Army Robert W. Page "directed the Corps of Engineers to undertake a thorough review of the Missouri River main stem Reservoir Operating Plan" and to update the plan to "reflect current condi-

tions in the basin." (U.S. Army Corps of Engineers, N.W. Division, Missouri River Master Manual Review and Update Administrative Record ("USACE Admin. R.") Ex. 11.) Phase One of this review process was to be finished by May 1, 1990, and Phase II, which included the completion of a Final EIS new Master Manual, was to be finished by October 31, 1991. (*Id.* Ex. 15.) In September 1990, the anticipated completion of Phase II was pushed back to October 1, 1992. (*Id.* Ex. 106.) In February 1991, the completion date was modified to "the end of 1992 rather than mid–1992." (*Id.* Ex. 156.) From November 1992 until April 1993, the completion date was delayed at least three different times. (*Id.* Exs. 423, 472, and 475.) In mid-April 1993, the Corps projected Master Manual completion to late 1995. (*Id.* Ex. 475 at 8939.) In February 1996, the Corps delayed the new Master Manual to 1998. (*Id.* Ex. 884.) In July 1996, the Corps projected completion for 2000. (*Id.* Ex. 894.) In March 1998, this deadline was extended to 2002. (*Id.* Ex. 908.) In October 1999, the new Master Manual was delayed to March 2003. (*Id.* Ex. 1032.) In July 2003, the Corps again delayed completion to spring 2004. (*Id.* Ex. 1785.) Presently, the Corps represents to the Court that is unable to meet its previously anticipated March 2004 deadline.

These continuous delays in the administrative record are not an exclusive listing of the Corps' false assurances to revise the Master Manual. In addition, the Corps has assured numerous courts of its continued intention to issue a new Master Manual. For example, the Eighth Circuit Court of Appeals determined that because a new Master Manual was forthcoming, the legal issues before it were moot: "[w]e thus do not believe that the possibility that the Upper Basin states will be challenging future Corps actions taken pursuant to the 1979 Manual—especially in view of the fact that the Manual is being revised—rises to the level of a concrete possibility [to be capable of repetition but evading review]." *South Dakota v. Hazen*, 914 F.2d 147, 151 (8th Cir.1990). In 1993, the Corps represented to the Montana District Court its intention to issue a new Master Manual, and as a result, that court dismissed the action as moot: "there is a reasonable expectation that the Corps' revised plan will reflect contemporary uses and needs of the Missouri River Basin." *South Dakota v. Bornhoft*, File No. 91–26, slip op. at 3 (D.Mont. Feb. 3, 1993). With respect to the cases involved in this litigation, the Corps has consistently maintained that a revised Master Manual is forthcoming. *See South Dakota v. Ubbelohde*, 330 F.3d 1014, 1020 (8th Cir.2003) ("the Corps assures this Court that the revisions should be completed quite soon"); *American Rivers v. U.S. Army Corps of Eng'rs*, 271 F.Supp.2d 230, 239 (D.D.C.2003) ("after more than ten years of work and multiple assurances to various courts that the latest revision would be soon completed, the Corps has not yet completed its revision" (internal citations omitted)). At the status conference in September 2003, the Corps represented to this Court its intentions to issue a new Master Manual by the end of 2003. Even now, the Corps' consolidated Motion for Summary Judgment on all of the parties' claims asserts that all of the pending claims on the existing factual circumstances are moot because a revised Master Manual is forthcoming. However, the Corps now presents to this Court its inability to comply with the October 1, 2003, Scheduling Order, and further submits that it "reserves the right" to request an additional extension of time.

The Court takes serious issue with the Corps' repeated failures to issue a new Master Manual, and is unpersuaded by its

renewed request for further delay. The Corps has established its own precedent and has defied its governmental obligations by delaying the issuance of the Master Manual. The Court cannot permit the Corps to hide behind its illusory promises. The fact is that until a new Master Manual is completed, this Court and the interested parties are in limbo. The Corps has successfully evaded judicial review on this issue and has successfully argued the doctrine of mootness to various other courts at other times in litigation involving the Missouri River. However, the Court will no longer entertain that argument. Until the Corps actually issues a new Master Manual, the Corps' mootness defense is without merit and is in fact offensive to the Court.

No previous court has compelled the Corps to issue this revised Master Manual. At this time, the Court modifies the October 1, 2003, Scheduling Order, and requires that the Corps issue a revised Master Manual and corresponding 2004 Annual Operating Plan no later than March 19, 2004. This Court will conduct a status conference on Friday, March 5, at 10:30 a.m., with liaison counsel. If the Corps refuses to expeditiously act under the Court's deadline, the Court will not hesitate to compel agency action and impose sanctions. Moreover, if the Corps fails to comply with this March 19, 2004, deadline, the Corps must substantively respond to all pending Motions by Friday, April 2, 2004. The Corps' current responses are insufficient for a complete evaluation of the claims before the Court. Finally, the Court expects that the Corps will still "distribute copies of its draft final Master Manual and draft final 2004 AOP to the Court and the parties on March 1, 2004."

(Defs.' Mem. in Supp. of Mot. to Amend at 5.)

The Court acknowledges that requiring the Corps to issue a final revised Master Manual by March 19 requires that the Corps violate its obligation to permit a 30–day public review period for the Final EIS. However, the Court believes that continuing the delay of a new Master Manual is more detrimental. The National Environmental Policy Act ("NEPA") requires, "to the fullest extent possible," that federal agencies issue an environmental impact statement and allow for public review with regard to any environmentally significant federal action. 42 U.S.C. § 4332. The Supreme Court has determined that federal agencies must strictly comply with these requirements unless such compliance would create an "irreconcilable and fundamental conflict" with other statutory obligations. *Flint Ridge Develop, Co. v. Scenic Rivers Assoc.,* 426 U.S. 776, 789, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976). This Court interprets *Flint* as allowing an agency to forego strict compliance with NEPA in instances where failure to take quick action would have significant negative consequences. While the Court does not decide at this time whether the Corps has a mandatory duty to issue a revised Master Manual, the FCA indicates that the Corps nonetheless has a statutory duty to update the Master Manual. 33 U.S.C. § 701 *et seq.;* 33 C.F.R. § 222.5. Therefore, though this schedule will not allow for the full 30–day public review period under NEPA, the Court believes that the review period between March 5 and March 19 is a sufficient compromise in exchange for the issuance of the long awaited revised Master Manual.[1]

---

1. The Court notes that the Corps and corresponding agencies could provide for publication prior to March 5, 2004, allowing a longer review period. Moreover, the Corps represents that the Final EIS has been complete since the end of January 2004. (Defs.' Mem.

The Court refrains from further modifying the Scheduling Order at this time, but acknowledges that some amendment is likely necessary. The Court requests that liaison counsel cooperate and present at the status conference a proposed amendment that satisfies party interests and judicial efficiency, in light of this Order.

The Court would like to remind the parties that the October 1, 2003, Scheduling Order issued by this Court was taken nearly verbatim from the submissions of the parties. In fact, the proposed scheduling order agreed to and submitted by the majority of the parties specifically states: "[a] decision document setting out the Corps' planned operations for 2004 ... will be released to the public on or before March 1, 2004." (Joint Proposed Scheduling and Discovery Order at 3.) The term "decision document" was not a term created by this Court, but rather one created by the parties in their stipulation. As evidenced in its Motion to Amend, the Corps acknowledges that it fully intended "to issue its revised Master Manual and final 2004 AOP by March 1, 2004 in accordance with the Court's scheduling order." It is clear that the Corps interprets the term to mean Master Manual, and therefore the Court's interpretation is the same.

Additionally, the Court is aware of the numerous Motions pending. However, these Motions request oral argument, which is the responsibility of counsel to schedule. In particular, the Court believes that the claims in *North Dakota v. U.S. Army Corps of Engineers*, Civil File No. 03–4288, are ripe for adjudication. The Court recommends that the parties to this action either withdraw their request for oral argument, or schedule a hearing date with the Court's calendar clerk. Finally, the Court is attempting to deal with the voluminous nature of the entire Missouri River file. The Court is addressing counsel correspondence and pending motions at the direction of the parties and as fast as it is able to do so. The Court ensures the parties that it will continue to direct this litigation in a timely manner.

Accordingly, based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Paragraph 9 of the October 1, 2003 Scheduling Order (Clerk Doc. No. 52) is **AMENDED** as follows: "The Corps shall release a revised Master Manual and 2004 Annual Operating Plan on or before March 19, 2004.";

2. If the Federal Defendants fail to comply with this Order, they must substantively respond to the pending Motions for Summary Judgment no later than April 2, 2004; and

3. A status conference will be held on Friday, March 5, at 10:30 a.m., in Courtroom 1, Warren E. Burger Federal Building, St. Paul, Minnesota.

---

in Support Mot. to Amend at 4 ("[Final EIS] materials are now complete").) Though the Corps claims that the Final EIS is too "voluminous" to allow for publication before March 5, the Court is unpersuaded by this argument. For fifteen years the Corps has published EIS drafts and responded to public comment, acquiring skill in such procedures.

The Court today shortens the time for public comment because the Corps has consistently failed to fulfill its obligations under the FCA. The Court nonetheless believes that the actual publication of a new Master Manual will outweigh any detrimental effect a shortened review period may have on the public.