**GET OIL OUT, INC., et al., Plaintiffs,**

**v.**

**Cecil D. ANDRUS, Secretary of the Interior, et al., Defendants.**

**No. 78–1721–HP.**

United States District Court, C. D. California.

Jan. 11, 1979.

Bruce J. Terris, Edward Comer, Washington, D. C., Geoffrey Cowan, Los Angeles, Cal., for plaintiffs.

James W. Moorman, William M. Cohen, U. S. Dept. of Justice, Washington, D. C., Andrea Sheridan Ordin, U. S. Atty., Stephen E. O'Neil, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

Charles S. Findlay, U. S. Dept. of the Interior, Washington, D. C., McCutchen, Black, Verleger & Shea, Philip K. Verleger, Betty-Jane Kirwan, Los Angeles, Cal., for defendants in intervention Atlantic Richfield Co., Chevron U.S.A. Inc., Exxon Corp., Mobil Oil Corp., Sun Oil Co., Texaco, Inc. and Union Oil Co. of Calif.

## MEMORANDUM OF DECISION

PREGERSON, District Judge.

This case concerns three oil drilling and production platforms proposed for the Santa Barbara Channel. Plaintiffs are non-profit California environmental corporations and Yvon and Melinda Chouinard, owners of a beach front home in Ventura, California. Defendants include the Secretary of the Interior and officials of the United States Geological Survey, an agency within the Department of the Interior. Intervening defendants are seven major oil companies holding oil and gas development leases in the channel. Those leases were awarded by the Department of the Interior pursuant to a public sale conducted in 1968.

In 1977, the Department of the Interior, through the United States Geological Survey, approved development plans submitted by Chevron, Sun Oil, and Mobil Oil for three oil drilling and production platforms—Platform Grace, Platform Henry, and Mobil Platform—for the Santa Barbara Channel. The implementation of each development plan is subject to close monitoring and supervision by the Geological Survey through its inspection and certification procedures. Befcre approving each development plan, the Geological Survey prepared an environmental assessment (EA) pursuant to the Council on Environmental

Quality Guidelines, 40 C.F.R. § 1500.6 (1977). Each EA referred to comprehensive environmental impact statements prepared earlier in connection with ongoing oil and gas development in the channel.[1] After preparing each EA, officials in the agency concluded that each development proposal is not a "major federal action significantly affecting the quality of the human environment" within the meaning of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.* Therefore, the agency concluded that it was not required to prepare an environmental impact statement (EIS) for each platform pursuant to 42 U.S.C. § 4332(2)(C).

Plaintiffs contend that the Geological Survey erred in its threshold determination that each proposal is not a "major federal action significantly affecting the quality of the human environment" and that NEPA requires an EIS for each platform. Plaintiffs further contend that the earlier EIS's are inadequate because they are not site-specific, *i. e.,* they do not analyze the potential environmental impacts of each proposed platform.

Federal defendants and the seven intervening defendant oil companies contend that no site-specific statements are required in light of the Geological Survey's EA's and three comprehensive EIS's prepared earlier on oil and gas development in the channel. Furthermore, federal defendants argue that action by this court is premature with respect to the Mobil Platform because the Department of the Interior has revoked its approval of the development plan.

The complaint seeks to halt all further activities in connection with the platforms until a site-specific EIS, meeting the requirements of NEPA, is prepared for each proposal.

This matter is before the court on plaintiffs' motion for partial summary judgment and federal defendants' motion for summary judgment. Having considered the pleadings, the memoranda of law, the administrative record, and the oral argument of counsel heard on December 15, 1978, the court concludes that federal defendants' motion as it relates to the Mobil Platform should be granted, and that installation work on Platforms Grace and Henry should be enjoined until the Department of the Interior prepares and files with the court environmental assessments conforming to the court's rulings as set forth below.

Before considering the standard of review and the procedural issues implicated in the determination of these motions, a brief history and description of the three platforms is helpful.

### Platform Grace

Chevron's plan of development locates Platform Grace in 318 feet of water 12 miles southwest of Ventura. The platform, if installed, will serve the Santa Clara Unit, a cluster of eight oil and gas leases spanning 46,080 surface acres. Chevron, as co-lessee of seven of the eight leases, is the designated operator of Platform Grace. On January 7, 1977, Chevron submitted a development plan for Platform Grace. On July 14, 1977, the Geological Survey approved the development plan subject to its certification of all construction phases, all proposed operating procedures, and all proposed facilities.

### Platform Henry

Sun Oil's plan of development locates Platform Henry in 175 feet of water 4 miles from the nearest shoreline over two separate oil and gas fields. Sun Oil is the designated operator of Platform Henry. On June 14, 1977, Sun submitted a development plan for Platform Henry, approved by the Geological Survey on November 11, 1977. Final approval is subject to the agency's certification of all construction phases, all proposed operating procedures, and all proposed platform facilities.

1. Those environmental impact statements are: (1) FES 76–13 entitled *Oil and Gas Development in the Santa Barbara Channel Outer Continental Shelf off California* ; (2) FES 74 -20 entitled *Proposed Plan of Development, Santa Ynez Unit, Santa Barbara Channel, Off California* ; and (3) FES 71–9 entitled *Proposed Installation of Platforms C and Henry on Federal Oil and Gas Leases OCS–P 0241 and 0240 issued under the Outer Continental Shelf Lands Act, Santa Barbara Channel area off the Coast of California.*

## Mobil Platform

Mobil Oil's plan of development locates the Mobil Platform in 95 feet of water 4 miles southwest of Port Hueneme and 11 miles south of Ventura over the Hueneme Offshore Oil Field. The field comprises two leases acquired by Mobil and Union Oil. On June 25, 1976, Mobil, as operator of the two leases, submitted a development plan, approved by the Geological Survey on April 11, 1977. This approval was also conditional: all construction phases, all proposed operating procedures, and all proposed facilities must receive the agency's certification. After the plan was conditionally approved, Union Oil replaced Mobil as operator of the Mobil Platform. In September 1978, the Department of the Interior apparently revoked the approval of the original development plan and now requires Union to submit a new plan in accordance with new regulations issued January 27, 1978, 43 Fed. Reg. 3880 (amending 30 C.F.R. § 250.-34(1977)), or as revised pursuant to the Outer Continental Shelf Lands Act Amendments of 1978, Pub.L.No.95–372, 93 Stat. 659. Thus, there appears to be no agency action before this court for review with respect to the Mobil Platform.

## Standard of Review

The National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.,* provides that federal agencies must prepare an environmental impact statement for every "major federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). It appears from the language of the statute that two factors must be present to trigger the EIS requirement—a major federal action and an ensuing significant effect on the environment. The Ninth Circuit, however, explicitly rejected that line of analysis in *City of Davis v. Coleman,* 521 F.2d 661, 673 n.15 (9th Cir. 1975), *quoting Minnesota Public Interest Research Group v. Butz,* 498 F.2d 1314, 1321–22 (8th Cir. 1974):

> By bifurcating the statutory language, it would be possible to speak of a "minor federal action significantly affecting the

quality of the human environment," and to hold NEPA inapplicable to such an action. Yet if the action has a significant effect, it is the intent of NEPA that it should be the subject of the detailed consideration mandated by NEPA . . . . .

Thus, in *City of Davis,* the Ninth Circuit confined its review to the agency's decision that the project would have no significant adverse environmental consequences. *Id.* This court's initial task, then, is to review the Department of the Interior's threshold determination that the three platform proposals will not significantly affect the quality of the human environment.

■ In reviewing that agency's determination, the standard of review in the Ninth Circuit apparently is "whether the . . . agency has 'reasonably concluded' that the project will have no significant adverse environmental consequences." *City of Davis v. Coleman, supra,* 521 F.2d at 673. The court is not required to "determine whether a challenged project *will in fact* have significant effects." *Id.*

There is some uncertainty, however, whether the Supreme Court has adopted the arbitrary and capricious standard set forth in section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), when an agency's determination of no significant impact forecloses the preparation of an EIS. In *Kleppe v. Sierra Club,* 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976), where the proper standard of review was not at issue, Justice Powell remarked: "Absent a showing of arbitrary action, we must assume that the agencies have exercised [their] discretion appropriately."

Whether *Kleppe,* where at least one EIS was prepared, implicitly overrules the standard established in *City of Davis,* where no EIS was prepared, is a question this court need not decide now. The present state of the administrative record requires that this matter be remanded to the Department of the Interior to correct procedural defects in the administrative process. Therefore, the court need not, at this time, review the agency's substantive determination of no adverse significant environmental consequences.

*Review of Administrative Action*

In reviewing agency action, courts should "require the agency to provide a framework for principled decision making." *Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission,* 156 U.S.App. D.C. 395, 410, 481 F.2d 1079, 1094 (1973). At the very least, "when the agency has decided that a NEPA statement is not . . . necessary, it should state reasons for its decision." *Id.* Judge Skelly Wright, who spoke for the court in *Scientists' Institute,* explained the importance of and purpose behind issuing such a statement of reasons:

> The value of such a statement of reasons is becoming generally recognized as courts and agencies grapple with the difficult task of developing procedures for compliance with NEPA. . . .
>
> A statement of reasons will serve two functions. It will ensure that the agency has given adequate consideration to the problem and that it understood the statutory standard. In addition, it will provide a focal point for judicial review of the agency's decision, giving the court the benefit of the agency's expertise.

*Id.* 156 U.S.App.D.C. at 410, 411, 481 F.2d at 1094, 1095. *See also Hanly v. Kleindienst,* 471 F.2d 823 (2d Cir. 1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973); *Kelley v. Butz,* 404 F.Supp. 925 (W.D.Mich.1975).

In *Sierra Club v. Hathaway,* 579 F.2d 1162, 1167 n.9 (9th Cir. 1978), the Ninth Circuit, citing *Scientists' Institute,* recently endorsed the statement of reasons requirement. In that case, the court affirmed the denial of a preliminary injunction on the grounds that there was ample evidence that defendants would fully comply with NEPA's requirements. In support of its conclusion, the court noted that several factors suggested that the defendants would "either prepare an EIS at the appropriate phase of development or *issue a statement of reasons* detailing their rationale for concluding otherwise." *Id.* at 1167 (emphasis added). Moreover, newly-adopted regulations, "NEPA and Agency Planning," effective July 29, 1979, require a statement of reasons when the agency decides not to prepare an environmental impact statement. 43 Fed.Reg. 55978, 55992 (1978) (to be codified in 40 C.F.R. § 1501.4(e)).

█ In the instant case, the EA's prepared by the Geological Survey do not contain, nor otherwise qualify as, adequate statements of reasons detailing the agency's rationale for concluding that construction of the platforms will result in no significant effect on the quality of the human environment. Reasons should be set forth so that anyone reading the document is apprised of the factors considered by the agency and the analysis on which it based its decision. Here each EA sets forth about 25 pages of facts and general information about each platform. Then, on the signature page, two Geological Survey officials expressed their decision that "the proposal (does) (does not) constitute a 'major federal action' significantly affecting the quality of the human environment in the sense of NEPA, Section 102(2)(C)," by deleting the word "does," and then signing what appears to be a pre-typed declaration. Such a perfunctory approach does not "provide [the] framework for principled decision making" needed to ensure that governmental officials carefully analyze facts and information before rendering significant judgments. Moreover, the "(does) (does not)" format found on the EA's signature page suggests that the preceding pages contain facts and information that can support opposite conclusions. The implication that the document can support alternative conclusions presents a strong argument for requiring the decisionmakers to specify the reasons for their final choice. No reasons supporting the agency's negative impact determination are specifically set forth anyplace in the record. Thus, it is difficult, or perhaps impossible, for this court or the public, to discern the analysis by which the agency arrived at its final determination.

Therefore, as to Platform Henry and Platform Grace, this matter is remanded to the Department of the Interior for a statement of reasons explaining its determination that no significant adverse environmental consequences will ensue from the presence of these oil platforms in the Santa Barbara Channel. In preparing its statement of reasons, the Department of the

Interior might find it helpful to refer to the five areas of environmental concern listed in 42 U.S.C. § 4332(2)(C) and to the new "NEPA and Agency Planning" regulations cited above, particularly § 1508.9. Although the new regulations, effective July 29, 1979, have no present legal force, their underlying policies are laudable. These policies include public involvement "if the agency determines on the basis of the environmental assessment not to prepare" an EIS. 43 Fed.Reg. 55992 (1978) (to be codified in 40 C.F.R. § 1501.4(e)).

In light of the seemingly intense local interest in the installation of these platforms and the policies favoring public involvement in evaluating environmental assessments, if the agency, after remand, again makes a finding of no significant impact, the public should be notified of the agency's determination and given an opportunity to comment thereon by submitting relevant information bearing on that decision. Such procedures have been adopted by the Second Circuit in *Hanly v. Kleindienst, supra,* 471 F.2d at 836. They are also embodied in the new regulations cited above at § 1501.4(e)(1).

The statements of reasons referred to above shall be completed within sixty days from the entry of this order and attached to the EA's. Upon completion, the public in Santa Barbara and Ventura Counties shall be notified of the availability of the EA's by notice published in local newspapers of general circulation. The public shall have thirty days from the date of publication to submit comments and appropriate information to the agency. The EA's shall be provided to the public without charge, if practicable, or at a fee of no more than the actual costs of reproduction. The Department of the Interior will then have an additional thirty days to ponder the public's comments. At the end of that period, the EA's, the public comments, and the agency's response, if any, to those comments shall be lodged with the court. Of course, the agency is always free to re-examine its threshold determination and to arrive at a different conclusion regarding the environmental consequences of each platform and the need for a site-specific EIS.

As for the Mobil Platform, since the Secretary of the Interior, through counsel, represented to the court that the conditional approval of that development plan was revoked, it is premature for this court to act on that item. *County of Santa Barbara v. Kleppe,* No. CV–76–245–MML (C.D.Cal. 1976).

Accordingly, further installation work on Platform Henry and Platform Grace is enjoined until the procedures, above described, are completed.