GET OIL OUT, INC., et al., Plaintiffs,

v.

Cecil D. ANDRUS, Secretary of the
Interior, et al., Defendants.

No. 78–1721–HP.

United States District Court,
C. D. California.

July 26, 1979.

Bruce J. Terris, Edward H. Comer, Washington, D.C., Geoffrey Cowan, Los Angeles, Cal., for plaintiffs.

James W. Moorman, William M. Cohen, U.S. Dept. of Justice, Washington, D.C., Andrea Sheridan Ordin, U.S. Atty., Stephen E. O'Neil, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

Charles S. Findlay, U.S. Dept. of the Interior, Washington, D.C., McCutchen, Black, Verleger & Shea, Philip K. Verleger, Betty-Jane Kirwan, Los Angeles. Cal., for defendants in intervention: Atlantic Richfield Co., Chevron U.S.A., Inc., Exxon Corp., Mobil Oil Corp., Sun Oil Co., Texaco, Inc., Union Oil Co. of Cal.

MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

PREGERSON, District Judge.

Section 102 of the National Environmental Policy Act, (NEPA), 42 U.S.C.

§ 4332(2)(C), requires a federal agency to prepare an environmental impact statement (EIS) for any major federal action "significantly affecting the quality of the human environment." In 1977 the Department of the Interior (DOI) approved development plans for Platforms Henry and Grace, two oil and gas drilling and production platforms proposed for installation in the Santa Barbara Channel. Because DOI concluded, on the basis of two Environmental Assessments, that the platforms would have no significant effect on the quality of the human environment, it did not prepare a site-specific EIS for each platform.

Plaintiffs by this action seek to compel DOI to prepare site-specific EIS's for Platforms Henry and Grace; they maintain that DOI erred in concluding that these platforms will not significantly affect the quality of the human environment, and that NEPA therefore requires that such EIS's be prepared.

Defendants contend that DOI was correct in its determination that site-specific EIS's are not required for Platforms Henry and Grace. They maintain that the determination of no significant impact should be sustained, because DOI in reaching its conclusions acted neither arbitrarily and capriciously nor unreasonably. Defendants also point to the comprehensive environmental studies previously prepared by DOI on the subject of oil and gas development in the Santa Barbara Channel, and argue that even if the court should find that the impacts of these platforms are sufficiently significant to require the preparation of EIS's, those already prepared satisfy this need.

On June 25, 1979, this matter was again before the court on cross-motions for summary judgment. Argument on these cross-motions was heard once before, on December 15, 1978; however, the court in its decision filed January 11, 1979 (468 F.Supp. 82) declined to reach the merits of the action since the Environmental Assessments prepared by the U.S. Geological Survey, an agency within the DOI, were procedurally deficient. This deficiency stemmed from the failure of the agency to state specifically the underlying reasons for its conclusions that the development proposals for Platforms Henry and Grace were not "major federal action[s] significantly affecting the quality of the human environment" within the meaning of NEPA. That conclusion, if sustained, would eliminate the need for the agency to prepare an EIS for each platform. (40 C.F.R. § 1500.6.)

The court in its decision filed January 11, 1979 remanded this matter to DOI for a statement of reasons explaining its conclusion that no significant adverse environmental consequences would result from the presence of the two platforms in the Santa Barbara Channel. In its earlier decision, the court established certain procedures and time periods which DOI was to follow, and required the agency, if it again made findings of no significant impact, to notify the public in Santa Barbara and Ventura Counties of that determination and to give the public an opportunity to comment on the findings by submitting relevant information. The court's decision also enjoined further installation work on Platforms Henry and Grace until the procedures and time periods described therein were completed. That decision was complied with fully.

On remand, the agency, after articulating its reasons, reaffirmed its earlier determination of no significant impact. The overriding question this court must decide is whether DOI acted unreasonably or arbitrarily and capriciously in making findings of no significant impact, given the administrative record before it at the time of decision. There is no factual dispute as to the extent of the administrative record considered by DOI. The parties are again before the court on cross-motions for summary judgment.

Having considered the pleadings, the memoranda of law, the administrative record, and the oral argument of counsel heard on December 15, 1978 and on June 25, 1979, and having studied the statements of reasons prepared by the DOI pursuant to the court's earlier decision, the court now concludes that the DOI acted neither unreason-

ably nor arbitrarily and capriciously in determining that Platforms Henry and Grace will have no significant impact on the quality of the human environment. The court therefore rules that no further environmental impact statements need be prepared in connection with the proposed developments, and that the order enjoining further work on these platforms is vacated.

■ Before considering the pending cross-motions for summary judgment, the court must address a jurisdictional question first raised by the parties at oral argument on June 25, 1979. Section 23(c) of the 1978 Amendments to the Outer Continental Shelf Lands Act, (OSCLA), 43 U.S.C.A. § 1349(c)(2), provides that

Any action of the Secretary to approve, require modification of, or disapprove any exploration plan or any development and production plan under this [Act] shall be subject to a judicial review only in a United States court of appeals for a circuit in which an affected State is located.

Intervening defendants contend that this provision, which became effective on March 18, 1979, divests the district court of jurisdiction in this case. They assert that the subject of this lawsuit involves a decision by the Secretary of the Interior to approve development plans for two oil and gas drilling and production platforms, and that such approval falls within § 23(c), placing judicial review of such actions exclusively in the court of appeals.

This action was filed prior to the effective date of § 23(c). A question therefore arises whether Congress intended these amendments to apply to cases pending in district courts at the time the 1978 amendments became effective. It is a fundamental and well-settled principle of construction that statutes are not to be applied retroactively "unless the words used are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot otherwise be satisfied." *United States Fidelity & Guaranty Co. v. United States ex. rel. Struthers Wells Co.*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908). Here no

such directive can be found, either in the legislative history of the amendments or in the amendments themselves. Nor does *Bruner v. United States*, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952), which intervening defendants cite in their brief (filed July 2, 1979), support a denial of jurisdiction in this case. *Bruner* held that the jurisdiction of a district court to hear certain cases brought under the Tucker Act (28 U.S.C. § 1346) was eliminated when Congress amended the statute to withdraw specifically the district court's jurisdiction over such cases. In the instant case, however, there has been no repeal of the statute upon which this court's jurisdiction is based. This court has jurisdiction of this action under 28 U.S.C. § 1331, which gives the district court jurisdiction over cases involving federal questions, and that statute remains in full force. The fact that Congress has reposed all future actions involving Secretarial approval or disapproval of development plans in the court of appeals does not, therefore, affect cases currently pending in the district courts, since Congress has not indicated any intention that pending cases be affected.

■ A more fundamental reason exists for retaining jurisdiction in this court. Section 23(c) applies only to actions to "approve, require modification of, or disapprove any exploration plan or any development and production plan *under this [Act]*," (emphasis added). Plaintiffs, however, do not challenge any such action; they seek only to require the Secretary of the Interior to prepare EIS's concerning Platforms Henry and Grace in accordance with NEPA provisions mandating EIS's whenever federal action will significantly affect the human environment. In short, this lawsuit is not brought under OCSLA, to which 23(c) explicitly refers when it grants the court of appeals jurisdiction to review Secretarial approval of development plans "under this Act." Rather, this lawsuit, which concerns only the Secretary's decision that no EIS need be prepared, is brought under § 102 of NEPA (42 U.S.C. § 4332). This interpretation of § 23(c) is supported by subsection (a)(6) of § 23, which provides that

Nothing in this section shall restrict any right which any person or class of persons may have under any other Act or common law to seek appropriate relief.

The OCSLA amendments of 1978 do not restrict a plaintiff's right to bring suit to force compliance with NEPA, and this action was brought for precisely that purpose. Therefore, § 23(c) does not apply here. This court has jurisdiction to decide the question before it.

■ In deciding the issues presented by the cross-motions for summary judgment, a court's role under NEPA is defined in *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976):

Neither [NEPA] nor its legislative history contemplates that a court should substitute its judgment for that of the agency as to the environmental consequences of its actions. The only role for a court is to insure that the agency has taken a "hard look" at environmental consequences; it cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken." [Citations omitted.]

Furthermore, in reviewing the DOI's threshold determination that the two platforms will not significantly affect the quality of the human environment, the standard of review in the Ninth Circuit apparently is "whether the responsible agency has 'reasonably concluded' that the project will have no significant adverse environmental consequences." *City of Davis v. Coleman*, 521 F.2d 661, at 673 (1975). The court is not required to "determine whether a challenged project *will in fact* have significant effects." Id. In reviewing the agency's determination, the court need not limit itself to any single environmental analysis, but may review the administrative record available to the agency when it reached its decision. *City of New Haven v. Chandler*, 446 F.Supp. 925 (D.Conn.1978).

As stated in this court's decision of January 11, 1979,

There is some uncertainty, however, whether the Supreme Court has adopted the arbitrary and capricious standard set forth in section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), when an agency's determination of no significant impact forecloses the preparation of an EIS. In *Kleppe v. Sierra Club*, 427 U.S. 390, 412, 96 S.Ct. 2718, 47 L.Ed.2d 576 (1976), where the proper standard of review was not at issue, Justice Powell remarked: "Absent a showing of arbitrary action, we must assume that the agencies have exercised [their] discretion appropriately."

Whether *Kleppe*, where at least one EIS was prepared, implicitly overrules the standard established in *City of Davis*, where no EIS was prepared, is a question this court need not decide now.

There is still no need to decide this question, for under either standard the agency's actions in this case meet the purposes and requirements of NEPA.

The requirements imposed by NEPA with respect to the preparation of an EIS are strict, but they are not inflexible, and should be given a reasonable interpretation by the courts. *Arkansas Community Organization for Reform Now v. Brinegar*, 398 F.Supp. 685 (D.C.Ark.1975), aff'd 531 F.2d 864 (8 Cir.). In another case involving offshore oil and gas leases, the Court of Appeals for the District of Columbia wrote that courts will not "impose unreasonable extremes" upon federal agencies seeking to comply with NEPA "[s]o long as the officials and agencies have taken the 'hard look' at environmental consequences mandated by Congress . . . ." (Citations omitted.) *Natural Resources Defense Council, Inc. v. Morton*, 148 U.S.App.D.C. 5, 16, 458 F.2d 827, at 838 (1972). The court is satisfied that DOI has indeed taken the hard look required by NEPA. A review of the proposals before the agency and the environmental impact statements and analyses already completed demonstrate the extent to which DOI has complied, not only with the letter, but with the spirit of NEPA.

Sun Oil's development proposal for Platform Henry approved by the DOI provides

for the installation of a conventional, self-contained drilling and production platform 4 miles from shore. The only additional support facilities required will be 3 submerged eight inch pipelines and a cable for electricity and communication. The pipelines will extend to an existing platform, Platform Hillhouse; from there existing pipelines will carry the oil and gas to currently operating treatment facilities at Rincon.

Chevron's development proposal as approved calls for the installation of Platform Grace, a conventional drilling and production platform, 12 miles southwest of Ventura, California. Few new support facilities will be required; one ten inch and one 12 inch submerged pipeline to transport oil and gas to Platform Hope, 12 miles distant; two new gas compressors, one on Platform Hope and one on Platform Heidi; and an oil metering device at an existing on-shore facility. An overland pipeline will be built to transport the oil from the Carpenteria facilities to refineries. This pipeline will eliminate the need for tankering.

DOI has been involved in authorizing and supervising oil and gas development in the Santa Barbara Channel since 1969. Since that time, DOI has prepared a number of environmental impact statements dealing specifically with oil and gas development in the Santa Barbara Channel.[1] These impact statements are comprehensive and detailed, and discuss at great length the potential environmental impacts of oil and gas development in the Channel. In addition to these impact statements, DOI has prepared extensive Environmental Analyses on Platforms Henry and Grace. These Analyses include detailed descriptions of the proposed actions, and consider their effect on geology, air quality, physical oceanography, flora and fauna, socio-economics, and on other environmental aspects of the project. These documents also consider the potential environmental effects of accidents, such as an oil spill, and discuss the feasibility of alternative courses of action.

The DOI concluded, based upon the studies and impact statements noted above, that the environmental impact of these two platforms on the Santa Barbara Channel was not sufficiently significant to require the preparation of site-specific environmental impact statements for each platform. This court did not review that determination when the parties appeared before it in December of 1978, because the agency had failed to provide an explicit statement of reasons for its conclusions. Accordingly, the DOI on remand was afforded the opportunity to reconsider its conclusion that the project would have no significant impact, and was required to prepare a statement of reasons for its decision if upon reconsideration it reaffirmed its earlier conclusion. DOI was instructed, if it reaffirmed its earlier conclusion, to notify the public and provide an opportunity for public comment. The DOI reconsidered its decision, and after reaffirming its earlier conclusion prepared two detailed statements, one for each platform, setting forth the reasons for its conclusion that Platforms Grace and Henry would have no significant impact on the environment.[2] The public was notified of

1. 1976 "Oil and Gas Development in the Santa Barbara Channel" (FES 76–13), prepared by the Department of the Interior.

1975 "Proposed Increase in Oil and Gas Leasing on the Outer Continental Shelf," prepared by the Department of the Interior, (considers leasing off California Coast as part of national development).

1974 "Proposed Plan of Development, Santa Ynez Unit, Santa Barbara Channel, off California," (FES 74–20), prepared by the Department of the Interior.

1971 "Proposed Installation of Platforms C and Henry on Federal Oil and Gas Leases OCS–P 0241 and 0240 Issued Under the Outer Continental Shelf Lands Act, Santa Barbara Channel off the Coast of California," prepared by the Department of the Interior.

1971 "Drilling of Exploration Wells in Santa Barbara Channel Offshore California," prepared by the Department of the Interior.

2. The draft of a four volume "Environmental Impact Report/Environmental Assessment," (78–EIR–16) prepared jointly by state and federal agencies, became available to and was considered by DOI during its re-evaluation. This document, which comprehensively analyzes the probable environmental impacts of Platforms Grace and Henry, did not alter DOI's conclusion that no significant environmental impact would result from this development.

DOI's decision and was given an opportunity to comment. The comments were considered by DOI; its conclusions remained unchanged. In the Notice of Decision which accompanied the statements of reasons submitted to the court, DOI stated that in making his determinations

the Conservation Manager relied on the CEQ regulations, (43 Fed.Reg. 55978 (1978)), existing environmental documents, and the comments submitted during the public comment period. No issue was raised during the re-evaluation or in the comments which would cause a reversal of the Manager's original decision that further EIS's for either Platform Henry or Platform Grace are unnecessary.

The Department of the Interior has taken the hard look mandated by Congress and has made its decision. In light of the extensive administrative record before the agency, plaintiffs have failed to show, and this court cannot say, that DOI's decision was made unreasonably or in an arbitrary and capricious manner. Plaintiffs' motion for partial summary judgment is therefore denied.

Defendants' motion for summary judgment is granted.

The restraining order issued on January 11, 1979 enjoining further installation work on Platforms Henry and Grace is hereby vacated.

This Memorandum and Order shall constitute the court's findings of fact and conclusions of law pursuant to F.R.Civ.P. 56.