Tim JONES; Stan Stephens; Nancy & James Lethcoe; Wendy Simpson; Alaska Wilderness Sailing Safaris; Stan Stephens Charters; The Whale Center; Simpson's Marine Charters; Sierra Club; Greenpeace U.S.A.; Greenpeace Canada; and Southeast Alaska Conservation Council, Inc., Plaintiffs,

and

State of Alaska, Intervenor-Plaintiff,

v.

William G. GORDON, Assistant Administrator of Fisheries, National Marine Fisheries Service; John V. Byrne, Administrator of National Oceanic and Atmospheric Administration; Malcolm Baldridge, Secretary for the United States Department of Commerce; and the United States Department of Commerce, Defendants,

and

Sea World, Inc., Intervenor-Defendant.

No. J84–011 CIV.

United States District Court,
D. Alaska.

Jan. 16, 1985.

Lauri J. Adams, Laurie L. Davis, Atty. Gen.'s Office, Juneau, Alaska, for plaintiffs.

Eileen Sobeck, Dept. of Justice, Washington, D.C., Mark Davis, Asst. U.S. Atty., Michael T. Thomas, Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on the parties' cross-motions for summary judgment. Although the parties' briefs are exceptionally lengthy, the issue to be decided is a simple one: Did the federal government violate NEPA, 42 U.S.C. § 4321 *et seq.*, in failing to prepare an Environmental Impact Statement (EIS) prior to issuing a permit to Sea World, Inc. for the taking [1] of up to 100 orca whales and the permanent retention of 10 such animals?

### I. *Background*

Under the Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.* (MMPA), it is illegal to capture marine mammals, including killer whales or orcas (species *Oricinus orca*), for scientific or display purposes unless the Secretary of Commerce has authorized the taking by issuing a permit. Procedures for the issue of permits are contained in 16 U.S.C. § 1374. Sea World applied for a permit to temporarily capture, primarily off the coast of southeast Alaska, up to 100 orcas and to retain 10 of those whales for display in their aquatic zoological parks. In the permit application, Sea World also requested to perform certain allegedly non-harmful scientific tests on all the captured animals.

Sea World submitted a revised application to the National Marine Fisheries Service (NMFS) on March 9, 1983. Notice of receipt of this application was published in the Federal Register March 17, 1983, as required by 16 U.S.C. § 1374(d)(2). Public hearings on the permit were held in Seattle August 16 and 17. The public comment period was extended several times, finally closing August 26. The NMFS received voluminous comments, both favoring and opposing the permit. In particular, the NMFS received detailed comments and suggestions from the Marine Mammal Commission (MMC). NMFS issued Sea World a permit November 1, 1983 and attached a number of conditions to the permit that attempted to alleviate many of the major concerns of the public and the MMC. In effect, the NMFS conditioned most of the requested activities upon Sea World conducting preliminary research in areas of concern, reporting this research to NMFS, and receiving specific subsequent authorization from it.

The total resident orca population of Southeast Alaska is estimated at 300, although scientists are unsure of the exact number since no comprehensive census has ever been taken. The permit allows Sea World to temporarily capture 100 orcas, and any animal previously captured may be recaptured up to two times during the five-year term of the permit. However, no more than 30 animals may be captured or recaptured in any one year in Alaska. Further, no more than 2% of the minimum population estimate for an area may be taken over a two year period.

### II. *60-Day Statute of Limitations*

█ Defendants initially argue that this suit is barred by the venue and statute of limitation requirements contained in 16 U.S.C. § 1374(d). This section states:

(6) Any applicant for a permit, or any party opposed to such permit, may obtain judicial review of the terms and conditions of any permit issued by the Secretary under this section or of his refusal to issue such a permit. Such review, which shall be pursuant to chapter 7 of

---

**1.** *See* 16 U.S.C. § 1362(13) (definition of to "take").

Title 5, may be initiated by filing a petition for review in the United States district court for the district wherein the applicant for a permit resides, or has his principal place of business, or in the United States District Court for the District of Columbia, within sixty days after the date on which such permit is issued or denied.

NEPA does not contain a statute of limitations, but rather courts have relied on the doctrine of laches to bar stale suits. Given that this suit was filed more than 60 days after permit issuance, the issue is whether Congress intended the 60-day statute of limitations in § 1374(d) to bar NEPA challenges as well as challenges to whether the Secretary complied with MMPA in issuing or denying the permit.

The court finds that the above section does not bar NEPA claims filed after 60 days. Such a limit on judicial review in a "permit" statute does not deprive a district court of jurisdiction to review a NEPA claim. This is because NEPA itself provides an independent source of jurisdiction for the district court. *See, e.g., People of the State of California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir.1979); *Wyoming v. Hathaway*, 525 F.2d 66, 69 (10th Cir.1975) *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976); *Get Oil Out, Inc. v. Andrus*, 477 F.Supp. 40, 42–43 (C.D.Cal.1979). Rather, courts have limited such statutory restrictions on judicial review to review of compliance with the statute under which the permit was issued.

This same result is reached when the language of § 1374(d) is examined. Under that section, the 60-day limit only applies to judicial review "of the *terms and conditions* of any permit issued by the Secretary." (emphasis added) Plaintiffs do not challenge the terms and conditions of the permit here. Rather, they challenge the initial legality of the permit based on the failure of the Secretary to comply with a separate statute. If the language of § 1374(d) is given its plain meaning, plaintiffs' challenge falls outside its language.

### III. *Statutory Conflict Between MMPA and NEPA*

Sea World argues next that there is a statutory conflict between the terms of § 1374 and NEPA. Under the *Flint Ridge* doctrine, where there is a clear and unavoidable conflict between the statutory language of NEPA and another statute, NEPA must give way. *See Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma*, 426 U.S. 776, 788, 96 S.Ct. 2430, 2438, 49 L.Ed.2d 205 (1976); *Alaska v. Carter*, 462 F.Supp. 1155, 1161 (D.Alaska 1978). However, before the court can hold that NEPA does not apply, it must find "an irreconcilable and fundamental conflict" between the Secretary's duties under NEPA and MMPA. *Flint Ridge Development Co.*, 426 U.S. at 788, 96 S.Ct. at 2438.

The basis of this alleged statutory conflict is the time limits for issuing permits located in 16 U.S.C. § 1374(d). Under these time limits, the Secretary must issue a permit within 90 days after initial publication of notice of the application in the Federal Register. The presence of these deadlines, Sea World argues, makes compliance with NEPA impossible in that no EIS can be prepared within 90 days.

NMFS's position, however, has always been that NEPA applies to § 1374 MMPA permits, but that because issuance of a permit normally does not represent a "major federal action" they are subject to a categorical exclusion and the agency is not required to prepare an EIS. *See* Federal Defendants' Response to Plaintiffs' Combined Requests for Admission and Interrogatories, Exhibit 2, Plaintiffs' Opposition to Sea World's Motion for Summary Judgment, Docket # 26; Revised NOAA Directive 02–10, 45 Fed.Reg. 49312 (July 24, 1980).

■ This court must give deference to the agency's determination that no irreconcilable conflict exists between the statute it has been entrusted to administer, MMPA, and NEPA. So long as the agency's choice "represents a reasonable accommodation of

conflicting policies that were committed to the agency's care by statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984).

■ The court finds that the agency's position, that both NEPA and MMPA apply to § 1374 permit applications, is reasonable. First, for the vast majority of permit applications, no EIS will be required and no conflict will exist between statutes. Although NMFS has issued over 400 MMPA permits, the Sea World permit is the first instance in which the need for an EIS has been suggested. Second, in the rare case where an EIS may be required, the NMFS can create time in the application process by delaying initial publication of the notice of application in the Federal Register. Alternatively, it can do what it did in this case, extend the hearing and comment times by publishing further notices in the Federal Register. Last, the court notes that an agency is permitted some flexibility with respect to the timing of the preparation of EIS's. *Hovson's, Inc. v. Secretary of Interior,* 519 F.Supp. 434, 445 (D.N.J. 1981), *aff'd on other grounds,* 711 F.2d 1208 (3d Cir.1983).

The court has reviewed the cases relying on the *Flint Ridge* doctrine cited by Sea World and finds them distinguishable. In each of the cases in which it was held that no EIS was required, the conflict between NEPA and the opposing statute was of far greater magnitude. The conflict between statutes here is minor. Given that NEPA directs NMFS to comply with the EIS requirement "to the fullest extent possible," the agency was reasonable in determining that a conciliation between NEPA and § 1374 was possible.

### IV. *Failure to Raise EIS Issue Before Agency*

■ Sea World's argument that plaintiffs are barred from raising the EIS issue before this court because they failed to raise the issue below is without merit. A party is not required to raise the EIS issue before the agency before raising it in court. In this case, the statements of Senator Slade Gordon's representative at the Seattle hearing gave NMFS sufficient notice that an EIS potentially was required. *See* Memorandum from R.B. Brumsted to William G. Gordon, October 12, 1983 at 5, 20 (Decision memorandum summarizing administrative proceedings) (Appendix 4, Federal Defendants' Motion for Summary Judgment). The agency's decision not to prepare an EIS was a conscious one. Plaintiffs cannot be faulted because they did not raise the issue before the agency. *See Environmental Defense Fund, Inc. v. EPA,* 489 F.2d 1247, 1256 n. 57 (D.C.Cir. 1973).

### V. *NOAA Directive 02–10 Requires EIS*

■ As was established above, NEPA's EIS requirement applies to the MMPA permit application process. NOAA Revised Directive 02–10 implements NEPA within NOAA and was the applicable directive at the time Sea World applied for a MMPA permit. *See* 45 Fed.Reg. 49312 (July 24, 1980). Section 6(c)(5) of that directive creates a categorical exclusion for scientific research and display permits under the MMPA. *Id.* at 49316. Section 6(c)(7) sets forth the exceptions to the categorical exclusion.

(7) *Exceptions.* The preparation of an EA or EIS is required for actions described in subsections (1)–(6) above if they:

(a) Are likely to result in significant environmental impacts as defined in Sec. 1508.27, or

(b) Involve a geographic area with unique characteristics, are the subject of public controversy based on potential environmental consequences, have uncertain environmental impacts or unique or unknown risks, establish a precedent or a decision in principle about future proposals, may result in cumulatively

significant impacts, or may have any adverse effects upon endangered or threatened species or their habitats.

*Id.* It is plaintiffs' position that NMFS's issuance of the Sea World permit was an action that fell within the exceptions to the categorical exclusion.

"[A]n agency's determination that a particular [action] does not require the preparation of an EIS is to be upheld unless unreasonable." *Foundation for North American Wild Sheep v. United States Dept. of Agriculture,* 681 F.2d 1172, 1177 (9th Cir.1982). In this instance, NMFS erred in its decision not to prepare an EIS because its determination that the issuance of the Sea World permit did not fall within exception (7)(b) was unreasonable. This same result is reached whether the court follows the language of the NOAA directive or CEQ regulations.[2] *See* 40 C.F.R. § 1508.27 (1983).

Initially, the court finds that the permit was the "subject of public controversy based on potential environmental consequences." *See id.* The term "controversial" as found here refers to cases "where a substantial dispute exists as to the size, nature, or *effect* " of the action. *Wild Sheep,* 681 F.2d at 1182. Evidencing this dispute, Senator Henry Jackson (D-Washington) noted in his comments to NMFS that "the potential effects of taking 100 whales is unknown." *See* Brumsted Memorandum, *supra,* at 6. NMFS also received numerous other comments questioning the effect of the taking on the pod structure, reproductive capacity, and overall population of orcas in Southeast Alaska. Based on these comments, the court finds potential uncertainty exists over the effect of the capture on the native orca population, and controversy over what that effect may be.

For the reasons listed above, the court also finds that the permit will have "uncertain environmental impacts" or pose

"unknown risks." 40 C.F.R. § 1508.-27(b)(5). The extent of this uncertainty is best reflected in the comments of the Marine Mammal Commission on the permit.

The possible adverse effects of the proposed capture, holding, and removal of killer whales cannot be assessed reliably without better information on the population(s) and the number, size, age/sex composition, and productivity of killer whale pods that could be affected by the proposed taking. Therefore, no general authorization should be issued, until the population parameters and the identity, number, size, and composition of killer whale pods in the proposed collection areas have been determined more precisely, or adequate provision has been made to obtain such information and factor it into the process leading to determination of when, where, and how many killer whales can be taken (captured, held, and removed) without having a significant adverse effect on any population or pod.

Plaintiffs' Motion for Summary Judgment, Exhibit 4, at 30. Plaintiffs' memorandum in support of its summary judgment motion documents the uncertain environmental impact of the permit in considerable additional detail. *Id.* at 23–35.

▆ Defendants argue that, because the permit is conditioned on Sea World initially performing population and other preliminary studies, the permit as issued contains mitigating measures that will prevent the action from having "significant" effects. In other words, because the agency retained the discretion to prevent the capture of whales, they argue that NMFS will assure that no major effect on the orca population will occur.

The court finds that argument unpersuasive. To allow an agency to avoid NEPA by making decisions conditional on future studies unallowably permits the agency to avoid the public discussion of effects and alternatives NEPA requires. Persons in

---

**2.** The exception in § 6(c)(7)(b) merely restates the Council on Environmental Quality (CEQ) regulation found in 40 C.F.R. § 1508.27 (1983). Based on the above, the court finds that the

purpose of exception 7(b) is to require an EIS whenever the CEQ regulations would require one.

plaintiffs' position would be excluded from participation in critical stages of the decision-making process in that they would be unable to comment on those studies. To the contrary, the fact there are such uncertainties about the effect of the permit that the agency required future studies evidences the propriety and necessity of an EIS.

### VI. *Functional Equivalent of EIS*

 The defendants also argue that the agency did not violate NEPA because the agency's evaluation of the permit application amounted to the functional equivalent of an EIS. The "functional equivalent" rule has to date been limited to the EPA, whose sole responsibility is to protect the environment. *See, e.g., Texas Committee on Natural Resources v. Bergland,* 573 F.2d 201, 208 (5th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 455, 58 L.Ed.2d 425 (1978); *Wyoming v. Hathaway,* 525 F.2d 66, 71 (10th Cir.1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). The EIS exception found in this rule is extremely narrow and has no application in the NMFS, an agency with a far different mandate than the EPA. *See Portland Cement Ass'n v. Ruckelshaus,* 486 F.2d 375, 387 (D.C.Cir.1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974).

The mere fact an agency has been given the role of implementing an environmental statute is insufficient to invoke the "functional equivalent" exception. To extend the doctrine to all cases in which a federal agency administers a statute which was designed to preserve the environment would considerably weaken NEPA, rendering it inapplicable in many situations. Given that NEPA requires that *"all agencies* of the Federal Government" shall "to the fullest extent possible" incorporate the EIS into their decision making, it is clear Congress did not intend this result. *See* 42 U.S.C. § 4332. (emphasis added).

Accordingly, IT IS ORDERED:

(1) THAT plaintiffs' motion for summary judgment is granted;

(2) THAT defendant Sea World's and the federal defendants' motions for summary judgment are denied;

(3) THAT the U.S. Department of Commerce Permit to Take Marine Mammals, Permit No. 439, issued to Sea World, Inc. is declared invalid and void in that it was issued without observance of procedure required by law, namely the preparation of an Environmental Impact Statement as required by 42 U.S.C. § 4332;

(4) THAT Sea World, Inc. is enjoined from taking orcas pursuant to Permit No. 439;

(5) THAT the clerk prepare a final judgment incorporating items (1), (3) and (4) above.