J. B. HESTER, Doris M. Hester, Maurice R. Bailey, Billie Sue Bailey, John J. Ronza, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

HIDDEN VALLEY LAKES, INC., Jack R. Lacy and Harry R. Lepping, Defendants.

No. DC 74-41-S.

United States District Court, N. D. Mississippi, Delta Division.

April 28, 1980.

Thomas A. Stroud, Goff, Sims, Cloud, Stroud & Shepherd, Memphis, Tenn., for plaintiffs.

Brick P. Storts, III, Tucson, Ariz., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The parties in the above-styled cause have agreed to submit the issue of liability to the court on a stipulation of facts. This stipulation having been filed, and the parties having submitted supporting and opposing briefs, the matter is now ripe for decision. The Memorandum will contain the court's findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

## I. *FINDINGS OF FACT.*

### A. *Nature of the Action.*

The plaintiffs bring this action pursuant to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* They allege that the defendants violated certain sections of that Act by making certain fraudulent statements, or omitting to make certain statements, in a number of property reports which were distributed to persons who purchased lots at the defendants' development site. The original complaint was filed on April 24, 1974, by six named plaintiffs on behalf of all others similarly situated. On October 21, 1975, the court entered an order dismissing the claims of four of the named plaintiffs, and a portion of the claims of the remaining plaintiffs, as being barred by the applicable statute of limitations. *Hester v. Hidden Valley Lakes,* 404 F.Supp. 580 (N.D.Miss.1975). An amended complaint was filed on January 24, 1976, but a portion of that complaint was dismissed on October 3, 1977; the plaintiffs were given leave to file a second amended complaint. Plaintiffs were given additional leave to amend that pleading, and the third and final amended complaint was filed on June 2, 1978.

The plaintiffs, J. B. Hester and Doris M. Hester, husband and wife, are resident citizens of Memphis, Tennessee. They represent a class of those persons purchasing lots at Hidden Valley Lakes Subdivision between August 24, 1971 and August 23, 1974. There are 169 members in this class. On October 24, 1978, the court approved the proposed notice to be sent to these class members, and on November 10, 1978, plaintiffs' counsel certified that such notice had been sent.

The defendant, Hidden Valley Lakes, Inc., was at the time of the actions involved in this case a corporation organized and existing under the laws of Mississippi. The defendants Jack Lacy and Harry R. Lepping were at all relevant times officers of and stockholders in Hidden Valley Lakes, Inc.

### B. *Stipulation of Facts.*

On October 31, 1979, the parties filed with the court a joint stipulation of the following facts:

1. Defendant Hidden Valley Lakes, Inc., was incorporated in the State of Mississippi on July 16, 1970. Hidden Valley Lakes, Inc., was organized for the purpose of owning land and buying, selling and otherwise

dealing in subdivision lots for recreational homes or second homes.

2. Jack Lacy and Harry R. Lepping, the individual defendants, were the president and secretary, respectively, and the only shareholders, of Hidden Valley Lakes, Inc., from July 16, 1970, until July, 1974, when Mr. Lepping sold all of his stock to Mr. Lacy. In July, 1974, Mr. Lepping resigned as an officer of Hidden Valley Lakes, Inc. In July, 1978, Mr. Lacy transferred all of his stock in Hidden Valley Lakes, Inc., to a Robert Earwood. At that time, Mr. Lacy resigned as an officer of Hidden Valley Lakes, Inc. Neither of the individual defendants, Mr. Lacy or Mr. Lepping, presently own any stock in Hidden Valley Lakes, Inc.; neither have any legal or equitable interest in Hidden Valley Lakes, Inc., and neither have any present connection with Hidden Valley Lakes, Inc., of any kind whatever.

3. Hidden Valley Lakes, Inc., purchased land in Tate County, Mississippi, approximately six (6) miles west of Coldwater, Mississippi, in August, 1970. This land comprised two hundred fifteen (215) acres and was subdivided into three hundred seventy-nine (379) lots.

4. Additional land was purchased and subdivided by Hidden Valley Lakes, Inc., in 1972, and lots on the new land purchased were offered for sale commencing December 12, 1972.

5. Hidden Valley Lakes, Inc., began offering lots at the subdivision for sale in September, 1970. At that time, there was no effective Statement of Record on file with the Office of Interstate Land Sales Registration (this office is a part of the Department of Housing and Urban Development).

6. Hidden Valley Lakes, Inc., had no effective Statement of Record on file with the Office of Interstate Land Sales Registration until August 24, 1971.

7. On August 24, 1971, Hidden Valley Lakes, Inc., began selling lots at the subdivision utilizing the property report hereinafter referred to as Property Report "A".

All persons who purchased lots at Hidden Valley Lakes, Inc., between August 24, 1971, and December 11, 1972, received a copy of Property Report A.

8. On December 12, 1972, Hidden Valley Lakes, Inc., began selling lots at the subdivision utilizing the property report which is hereinafter referred to as Property Report "B". All persons who purchased lots at Hidden Valley Lakes, Inc., from December 12, 1972, to August 24, 1974, received a copy of Property Report "B".

9. Commencing in September, 1970, and continuing thereafter, at least until August 24, 1974, sales were made of lots in the subdivision to persons residing in Tennessee, Arkansas, and Mississippi. As part of its sales solicitation efforts, Hidden Valley Lakes, Inc., utilized the United States mails for the purpose of sending sales brochures and materials to potential buyers in Tennessee, Arkansas, and Mississippi.

10. Sales of lots at Hidden Valley Lakes, Inc., were suspended by the Office of Interstate Land Sales Registration in August, 1973, and were not resumed until after August 24, 1974.

11. On April 30, 1971, plaintiffs J. B. and Doris Hester contracted to purchase Lots No. 13 and 14 of Plat 4 of the Hidden Valley Lakes, Inc., Subdivision. On April 9, 1972, plaintiffs J. B. and Doris Hester contracted to purchase Lot No. 15, Block 2, Section 8 of the Hidden Valley Lakes, Inc., Subdivision. The contract price for Lots No. 13 and 14 was a total of $1,295.00, and the contract price for Lot No. 15 was $2,995.00. At the time of contract for Lots 13 and 14, the Hesters received a property report not registered with the Office of Interstate Land Sales Registration. At the time of the purchase of Lot No. 15, the Hesters received a copy of Property Report "A".

C. *Allegations as to the Property Reports.*

Both of the property reports involved in this action were attached as appendices to the stipulation. Property Report "A" states that it was effective August 24, 1971,

and Property Report "B" was effective December 12, 1972. The plaintiff claims that a number of misstatements and omissions exist in both property reports.

As to Property Report A, effective August 24, 1971, the following misstatements and omissions are alleged:

1. Item No. 5 fails to state the dollar amount of the encumbrance as reflected on the deed of trust;

2. Item No. 7 states that the individual owner's annual payments to the property owners' association would be $25.00. Plaintiffs allege that there was no basis for such a representation, and that the defendants should have known that the costs would exceed $25.00;

3. Item No. 8(b)(2) states that no mobile homes less than 20 feet by 60 feet would be permitted. Plaintiffs allege that mobile homes less than those required proportions have been permitted;

4. Item No. 8(b)(3) and 8(b)(4) place certain restrictions on the size of the dwellings to be erected on the lots. Plaintiffs contend that many of the lots are too small to accommodate a structure with these required dimensions;

5. Item 8(b)(6) requires the owner to construct a waste disposal system which meets the minimum specifications of the Tate County Health Department. Plaintiffs contend that such specifications should have been stated;

6. Item No. 8(c) states that the buyer should determine the permissible uses of the property from local zoning authorities. Plaintiffs allege that such permissible uses should have been stated;

7. Item No. 9(a) states that the recreational facilities currently available include a "lake for swimming, fishing, and boating, to include a sand beach and boat houses, picnic areas and public toilet facilities." Plaintiff claims that the defendants knew or should have known that they would be unable to complete such facilities;

8. Item No. 9(b) states that the facilities described above would be completed by the fall of 1971 "without cost to purchasers."

Plaintiffs maintain that they were not completed by the scheduled time;

9. Item No. 10 states that all streets are graveled. Plaintiffs claim that this is a material misstatement. In addition, plaintiffs claim that Item 10 omits to state the following material facts:

(a) the cost to purchasers in the development of obtaining electric and telephone service;

(b) failure of the defendants to perform percolation tests on the soil to determine if septic tanks could be used;

(c) failure of the defendants to state that FHA and VA loans would not be available to purchasers, if the lot purchased used a septic tank not in accordance with minimum health standards.

10. Item No. 17 states that all lots and common facilities are "legally accessible by private roads." Plaintiffs claim that private roads have not been constructed to give legal access;

11. Plaintiffs allege that the defendants "failed to state that the value of each lot sold . . . was based on what the lot might be worth after the lot itself was developed and after substantially all of the lots in the Development were developed";

12. Plaintiffs allege that the property report failed to state that the defendants would not maintain the roads which were constructed;

13. Plaintiffs allege that the property report "omitted to state that Hidden Valley lacked the financial resources to complete the Development, make the improvements and perform the maintenance that was represented would be made and performed and lacked the money to refund . . . to dissatisfied purchasers should the law so require."

The allegations with respect to Property Report "B" are essentially the same as those with respect to Property Report "A", except that Property Report "B" represented the completion date of the recreational facilities to be July 1, 1973. Plaintiffs contend that the defendants knew or should have known that such a representation was not true.

In addition to the stipulations of fact and the language of the two property reports themselves, the plaintiffs rely upon the depositions of Harry R. Lepping and Jack Lacy, which have been filed and made a part of the record herein.

### D. *Violations of HUD Regulations.*

Plaintiffs cite this court to the specific regulations promulgated by the Office of Interstate Land Sales Registration, which regulations were in effect during the time period involved in this action. These regulations contain instructions which "must be followed" in submitting the property report. 24 C.F.R. § 1710.110. One of the general instructions provides that the questions "must be answered in concise, plain language but should *disclose all pertinent facts.*" 24 C.F.R. § 1710.110 (emphasis added). Plaintiffs maintain that this instruction was violated throughout the property reports in question, in that those facts or omissions listed previously were "pertinent" within the meaning of the Regulations.

■ Paragraph 4 of the special instructions for completing the property report states that

If the buyer or lessee is exposed to the risk of losing his investment in the event of the developer's failure or bankruptcy, this fact must be made unmistakably clear in this paragraph. Explanations should include any measures designed to protect the buyer's interests, and they must disclose any circumstances under which the buyer would lose his investment either because of his own default or the developer's inability to perform under the sales contract.

The possibility of a loss of the buyer's investment is not stated in paragraph 4, nor is the fact that such a loss could occur made unmistakably clear. Neither property report explains to those persons contracting to purchase lots at Hidden Valley Lakes that there was the possibility of a loss on their investment. The court finds that a reasonable investor could have considered this omitted fact an important one in making his decision to invest.

■ Paragraph 10 of the special instructions, 24 C.F.R. § 1710.110, states that the developers should

Describe arrangements made (contracts supported by completion bonds or escrows, for example) to assure completion of the improvements. If no arrangements have been made, so state. . . . If no sewage disposal arrangements are contemplated, state if land is suitable for the use of septic tanks, describing the results of any percolation tests. State estimated costs to buyer for septic tank.

Defendants admitted that the recreational facilities have never been completed (See Deposition of Jack Lacy at 36 & 63). However, the property reports involved in this action do not state that "no arrangements have been made" to assure completion of the facilities. Similarly, both reports fail to state whether or not the land is suitable for the use of septic tanks. The defendant, Jack Lacy, stated that at the time of the two property reports involved here, no percolation tests had been conducted and that in fact, the land was not suitable for the widespread use of septic tanks. (Deposition of Jack Lacy at 46–50). The court finds that a reasonable investor might have considered these omitted facts to be important ones in making his decision to invest.

### E. *Other Omissions and Misrepresentations.*

■ Plaintiffs have also alleged other material misstatements and omissions which do not violate specific regulations promulgated by HUD. The lack of information with respect to whether FHA or VA financing could be obtained was, according to the plaintiffs, misleading. This financing was unavailable because the waste disposal systems had not been approved. (Deposition of Jack Lacy at 68.)

Additionally, the property reports do not state that membership in the property owners' association was voluntary rather than mandatory. No provision in the contract for sale or the warranty deed mandates such membership. The court finds that a reasonable investor might have considered

these omissions to be important in making an investment decision.

## II. *CONCLUSIONS OF LAW.*

### A. *Liability.*

The court has jurisdiction over this action pursuant to 15 U.S.C. § 1719.

All other issues involved in the plaintiffs' complaint having been previously dismissed, the only count remaining is one under 15 U.S.C. § 1709(b)(2), which provides that:

> (b) Any developer or agent, who sells or leases a lot in a subdivision—
>
> > (2) by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot.[1]

As the Court of Appeals for the Fifth Circuit has stated, "[t]he Act closely parallels the philosophy and approach of the Securities Act of 1933. The underlying purpose of both is that prior to the purchase the buyer must be informed of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the security or the property." *Paquin v. Four Seasons of Tennessee, Inc.,* 519 F.2d 1105, 1109 (5th Cir.), *reh. denied,* 522 F.2d 1270 (1975), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). In order to effectuate that remedial purpose, the court should construe the Act broadly. *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

The question for this court to determine is whether § 1709(b)(2) should be so broadly construed as to impose liability for mis-

statements or omissions *not* required by specific HUD regulations. In reading and interpreting the language of this Act so that it parallels the purpose of the Securities Act of 1933, it should be noted that a difference exists in this area. Section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l,* imposes liability for the use of a prospectus "which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they are made, not misleading . . . ." Under § 1709(b)(2), however, liability is only imposed where the property report "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein . . . ." Clearly, the second standard is narrower than the first, and the court cannot impose liability where the statute does not create a violation. In that sense, the defendants are correct in contending that only those material facts *required to be stated* in the property report are at issue. *See Husted v. Amrep Corp.,* 429 F.Supp. 298, 305 (S.D.N.Y.1977). Were the plaintiffs relying solely upon these alleged omissions, the lack of specific regulations would therefore be a complete bar to recovery. However, the plaintiffs make other claims, which are based upon specific requirements found in the regulations. Such claims are obviously of the type to which § 1709(b)(2) is addressed.

Liability under § 1709 does not depend upon reliance by the plaintiff on the untrue statements, nor does it require intent to deceive on the part of the defendant. *Bryan v. Amrep Corp.,* 429 F.Supp. 313, 317 (S.D.N.Y.1977); *Hoffman v. Char-*

---

1. The Interstate Land Sales Full Disclosure Act does impose other requirements on developers, which are not at issue here. Section 1702(a)(1) makes it unlawful for a developer to "sell or lease any lot in any subdivision unless . . . a printed property report . . . is furnished to the purchaser in advance of the signing of any contract or agreement for sale or lease by the purchaser." Where the purchaser has not received the property report at the appropriate time, he may rescind the contract. 15 U.S.C. § 1703(b). In addition, the purchaser may sue the developer under § 1709(a) where the statement of record contains untrue statements or misleading omissions, and under § 1709(b)(1) where the developer violates § 1703. This court has previously ruled, however, that the plaintiffs' claims under §§ 1703 & 1709(b)(1) are barred by the applicable statute of limitations. *Hester v. Hidden Valley Lakes, Inc.,* 404 F.Supp. 580, 584 (N.D.Miss.1975). The only claim in the statutory framework now before the court is that under § 1709(b)(2).

*nita, Inc.,* 58 F.R.D. 86, 90–91 (M.D.Pa. 1973). In that sense, the section closely parallels § 12 of the Securities Act of 1933. Questions of intent or negligence are not at issue; once the statement is proven to be "material", liability is imposed. *See Hill York Corp. v. American Int'l Franchises, Inc.,* 448 F.2d 680, 695 (5th Cir.1971); *Johns Hopkins Univ. v. Hutton,* 422 F.2d 1124, 1129 (4th Cir.1970). The test for determining materiality, as defined in this Circuit, is "whether a reasonable investor might have considered the omitted fact or erroneous statement as important in making a decision." *Paquin v. Four Seasons of Tennessee, Inc.,* 519 F.2d 1105, 1109 (5th Cir.1975).

The court concludes that, in view of all the circumstances in this case, the erroneous misstatements and the omitted facts were material. Such facts should have been included in the property reports, not only because they were required by the Secretary of HUD but also because without such facts, the property reports were rendered misleading. The defendants were required to disclose all material and pertinent facts which related to the circumstances under which a buyer might lose his investment. Any reasonable investor under similar circumstances, would consider such facts to be important in determining whether or not to expose his investment to a great risk. The Act is intended to impose liability upon those who are responsible for placing such misleading statements in the stream of commerce. Having found that certain omissions were material and were required to be stated in the property reports, the court concludes that the defendants have violated § 1709(b)(2).

Defendants contend that they cannot be held liable under § 1709(b)(2), since the section only applies to a "developer or agent, who sells or leases a lot in a subdivision . . . ." Defendants allege that they are neither developers or agents of Hidden Valley Lakes, Inc., within the meaning of the statute. The term "developer" is defined in § 1701(4) as

any person who, directly or indirectly, sells or leases, or offers to sell or lease, or

advertises for sale or lease any lots in a subdivision; . . . .

The term "agent" is defined in § 1701(5) as any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; . . . .

Defendants contend that these definitions obviously limit liability to those who directly or indirectly engage in selling efforts. *See Bartholemew v. Northampton Nat'l Bank,* 584 F.2d 1288 (3rd Cir.1978). Since there is no proof of such participation, they argue, they do not meet the requirements. Nor can they be liable as "aiders and abettors" since there is no proof of "knowing assistance of or participation in a fraudulent scheme." *McCown v. Heidler,* 527 F.2d 204, 207 (10th Cir.1975); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (10th Cir. 1975).

█ The evidence, as shown by the stipulations and the defendants' depositions, reveals that the individual defendants were the president and secretary of the corporation. The defendant Lacy signed each of the property reports involved in this action; the defendant Lepping signed the statement of record. In addition, the deposition of Lacy indicates that both Lacy and Lepping had sufficient control over their employees to be able to give instructions for the distribution of property reports. Lacy stated that he "never sold", but he also stated that he had an office near the development, and that he was in that office. The salesmen whom he employed worked out of that office also. Based upon the defendants' relationship with Hidden Valley Lakes, Inc., the court concludes that both of the individual defendants are liable as developers or agents under § 1709. Even if they did not directly sell any of the lots in the subdivision, they had sufficient control over the salesmen and sales policy of the corporation to be considered indirect sellers.

### B. *Damages.*

Section 1709(c) provides that the damages recoverable in an action under § 1709(b), shall represent:

The difference between the amount paid for the lot and the reasonable cost of any improvements thereto, and the lesser of (1) the value thereof as of the time such suit was brought, or (2) the price at which such lot shall have been disposed of in a bona fide market transaction before suit, or (3) the price at which such lot shall have been disposed of after suit in a bona fide market transaction but before judgment.

The total amount recoverable, however, may not exceed "the sum of the purchase price of the lot, the reasonable cost of improvements, and reasonable court costs." 15 U.S.C. § 1709(e).[2]

As noted previously, this action has been certified as a class action, the class consisting of those persons who purchased lots at Hidden Valley Lakes between August 24, 1971, and August 23, 1974. There are approximately 169 members of this class. The only remedy which is available to all class members is damages, although at present the amount of damages is undetermined. In addition, some class members may be in a different position than others with respect to their claims, that is, they may fall into different categories under § 1709(c). This does not detract in any way from the maintenance of the action as a class action, for the violations which occurred were the same for all class members. To the extent that the different categories of damage claims present any problems, the court is of the opinion that such problems are easily resolved by resort to the flexible procedures available under Rule 23, Fed.R.Civ.P.

The question of damages is not now before this court; it has been reserved pending this decision on liability. The court is of the opinion that the action should now be referred to a Special Master for determination of the issue of damages and the amount to be awarded to class members. Such an action is allowed specifically by Rule 53(b), Fed.R.Civ.P., and Rule M–2(d) of the Local Rules of this Court. The court is of the opinion that the interests of justice will be better served by a reference to the Master for the computation of damages. The court will enter an appropriate order.

2. The court notes that the entire scope of the Interstate Land Sales Full Disclosure Act has been changed by amendments to the statute in 1979. Pub.L. 96–153 has deleted the language of § 1709(b)(2), and has added new prohibited activities under § 1703. Section 1709 has also been revised with respect to the damages recoverable, and there is no longer any statutory limitation. The parties have not submitted briefs to the court on the effect of these changes, and the court is not inclined to apply any statutory amendments retroactively. Section 410 of Pub.L. 96–153 provides that the changes are to be effective on the same date that new implementing regulations become effective, but in no event later than June 29, 1980. Certainly one cannot construe this language to mean that the new statutes should be applied to past violations. The court concludes that the old language of §§ 1701–1709 continues to govern in this action.