Charles PRICE, Plaintiff,

v.

OWENS-ILLINOIS DEVELOPMENT CORPORATION, and Robert C. Pabian, Defendants.

Civ. A. No. 85–32–2–MAC.

United States District Court, M.D. Georgia, Macon Division.

Aug. 27, 1986.

Richard J. Buttimer, Milledgeville, Ga., for plaintiff.

G.L. Dickens, Jr., Joe O. Mangum, III, Milledgeville, Ga., H. Randolph Aderhold, Jr., Sell & Melton, Macon, Ga., for defendants.

FITZPATRICK, District Judge.

This case concerns two lots in Section III of the Cove Subdivision, Lake Sinclair, Baldwin County, Georgia. Plaintiff Charles Price is contesting the action of defendant Owens-Illinois Development Corporation (OIDC) amending the applicable restrictive covenants to allow mobile homes in Section III of the subdivision. Cross-motions for summary judgment present the issue of whether OIDC violated one or more provisions of the Interstate Land Sales Full Disclosure Act (the Act), 15 U.S.C.A. §§ 1701–1720 (1982).

### Material and Undisputed Matters of Fact

Plaintiff purchased from OIDC two lots in Section III of the Cove Subdivision, Lake Sinclair, Baldwin County Georgia. Plaintiff purchased lots 6–E and 5–E on August 4, 1983 and November 10, 1983, respectively. Thomas J. Haley was OIDC's exclusive broker for this subdivision, and he sold to plaintiff the two lots in question.

Prior to the purchase of each lot, plaintiff received a copy of the property report as required by the Act. The property report contains a section entitled "RESTRICTIONS ON THE USE OF YOUR LOT." The report informs the prospective purchaser that there are recorded restrictions for all the tracts, and it states that "[t]he major provisions of these restrictions will be discussed in the paragraphs below." The report then states that "this discussion will highlight certain areas of the restrictions and should not be a substitute for a careful study of these restrictions by you." The report stated neither that the restrictive covenants prohibited mobile homes in Section III of the subdivision, nor that the restrictive covenants for Section III could be amended.

Ten days prior to the purchase of each lot plaintiff signed a document acknowledging that he had received a copy of the applicable restrictive covenants. Plaintiff also signed a sales contract ten days prior to the purchase of the first lot, lot 6–E, which stated that the buyer had read and understood the restrictive covenants applicable to his property. Nevertheless, at his deposition plaintiff denied having received a copy of the covenants. Plaintiff did admit in his deposition that he had read the section of the property report which suggested that he read the restrictive covenants on the property, but he stated that he signed the documents acknowledging receipt of the restrictive covenants "[j]ust to get through with all the paperwork involved in buying the lot." Plaintiff stated in his deposition that he was not prevented from reading the document before signing. The broker who sold the lots to plaintiff stated in his affidavit that he did furnish a copy of the covenants to plaintiff.

Prior to the purchase of lot 6–E plaintiff asked Thomas J. Haley whether or not mobile homes were allowed in the area. While the exact language of this conversation varies between plaintiff's deposition and Mr. Haley's affidavit, it is clear that Mr. Haley's response to plaintiff's inquiry did not indicate that mobile homes could never be placed in that area of the subdivision. In his deposition plaintiff stated that his inquiry "didn't go as to ... five or six years down the road, would there be mobile homes in there." According to plaintiff's best recollection, Mr. Haley stated that "No, mobile homes aren't allowed" rather than "No, there will never be mobile homes allowed in this subdivision."

The restrictive covenants in effect when plaintiff bought lots 5–E and 6–E provided that mobile homes could not be placed on any subdivision lots. The restrictive covenants did contain a reservation of the right of the developer to amend the restrictive covenants:

OWNER'S RESERVATION. Owens-Illinois Development Corporation, and its

successors and assigns, reserves the right for a period of Three (3) years from the date of execution hereof or until such time that a majority of the lots in the subdivision are sold, whichever comes later, to amend, modify, or delete from or add to these protective covenants by an instrument in writing which shall become effective when such instrument shall be officially filed for record in Baldwin County, Georgia.

Plaintiff bought lots 6–E and 5–E in August and November of 1983, respectively. OIDC first considered amending the covenants in September, 1984 when Robert Pabian proposed buying land in the subdivision for use as a mobile home park. OIDC subsequently amended the covenants to allow mobile homes in Section III on November 19, 1984.

### Conclusions of Law

Plaintiff claims that OIDC violated two sections of the Act, 15 U.S.C.A. § 1703(a)(1)(C), (a)(2)(B) (1982). The Act is designed to prevent deceptive trade practices by requiring developers to disclose information needed by potential buyers, *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n.*, 426 U.S. 776, 96 S.Ct. 2430, 2433, 49 L.Ed.2d 205 (1976), and it should be liberally interpreted to achieve its remedial purposes. *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir.1975). All of the disclosure provisions in the Act are not, however, equal in scope.

■ Section 1703(a)(1)(C) provides that it is unlawful for any developer or agent subject to the provisions of the Act

(C) to sell or lease any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact *required to be stated therein* pursuant to sections 1704 through 1707 of this title or any regulations thereunder....

15 U.S.C.A. § 1703(a)(1)(C) (1982) (emphasis added). This subsection may be violated in two ways. First, the property report could contain an untrue statement of material fact. Second, the property report could

omit to state a material fact "required to be stated...." *Id.* Plaintiff claims that OIDC violated the Act in the latter fashion when it did not state that the restrictive covenants applicable to Section III could be amended to allow mobile homes.

This court agrees with plaintiff that OIDC's omission was material. "The test of materiality is whether a reasonable investor might have considered the omitted fact or erroneous statement as important in making a decision." *Paquin v. Four Seasons of Tennessee, Inc.*, 519 F.2d 1105, 1109 (5th Cir.1975), *cert. denied*, 425 U.S. 972, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). Whether or not mobile homes are allowed in an area can have a significant effect on property values, and a reasonable investor would no doubt consider that fact as important in making a decision.

Plaintiff's claim under section 1703(a)(1)(C) fails, however, because neither the statute nor the applicable regulations require OIDC to state that the restrictive covenants can be amended. Section 1703(a)(1)(C) requires a developer to state any material fact required to be stated pursuant to sections 1704 through 1707. Section 1707(a) provides that:

[a] property report shall ... contain such of the information contained in the statement of record, and any amendments thereto, as the Secretary may deem necessary, but need not include the documents referred to in paragraphs (7) to (11), inclusive, of section 1705 of this title.

15 U.S.C.A. § 1707(a) (1982). Restrictive covenants are among the documents referred to in paragraph (7) to (11). The statute does not, however, require any information in the property report about restrictive covenants other than what is required by the regulations.

The Code of Federal Regulations requires the disclosure of certain information about recorded restrictive covenants. 24 C.F.R. § 1710.109(F)(1)(i) (1986). The following information must be included in the

property report for recorded restrictive covenants:

> (i) Have any restrictive covenants been recorded against the land in the subdivision? If so, do they contain items which require the purchaser to secure permissions, approvals or take any other action prior to using or disposing of his lot (e.g., architectural control, developer's right of first refusal, building deadlines, etc.)? If any of these or similar items are included, explain their meaning and effect upon the purchaser.

*Id.* A developer's reservation of the right to amend the restrictive covenants does not fall into this category of required disclosures, because it does not affect any permissions, approvals or similar action that the lot owner must take prior to using his lot.

A different provision of the Code of Federal Regulations applies to unrecorded restrictive covenants.

> (ii) If any restrictive covenants are to be used and if they have not been recorded, how will they be imposed? Include a statement to the effect that the restrictive covenants have not been recorded; that there is no assurance they will be applied uniformly; that they may be changed and that they may be difficult to enforce.

*Id.* § 1710.109(F)(1)(ii). This section applies to unrecorded restrictive covenants only, however.

The scheme of disclosure under the Act is clear. If restrictive covenants are recorded, then that must be stated in the property report along with any provisions in the covenants that require the purchaser to secure permissions, approvals, or take any other actions prior to using or disposing of his lot. 24 C.F.R. 1710.109(F)(1)(i). Beyond that the purchaser can read the covenants for further details on subdivision restrictions. Only if the covenants are unrecorded need the developer state that they may be changed prior to recordation.

■ A violation of section 1703(a)(1)(C) has occurred only if the omitted facts were material *and* required to be stated in the property report. *See Hester v. Hidden Valley Lakes, Inc.*, 495 F.Supp. 48, 53 (N.D.Miss.1980), *Husted v. Amrep Corp.*, 429 F.Supp. 298, 312 (S.D.N.Y.1977). Plaintiff's claim must fail under section 1703(a)(1)(C) because a reservation of the right to amend restrictive covenants is not required by the Act or by the applicable regulations.

■ The other provision of the Act upon which plaintiff relies is section 1703(a)(2)(B). That section provides that it is unlawful for any developer or agent subject to the provisions of the Act:

> (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision ...

15 U.S.C.A. § 1703(a)(2)(B) (1982). The language of this provision indicates that the overall offer and sale must be considered in determining whether there was an omission to state a material fact necessary in order to make the statements made not misleading. This section is broader in scope than section 1703(a)(1)(C), because it may be necessary to state a material fact in order to make the statements made not misleading even though the material fact is not required to be stated by the Act or by the applicable regulations.

This court previously has concluded that OIDC's failure to state that the restrictive covenants could be amended was an omission to state a material fact. At this juncture it is necessary only for the court to decide whether it was necessary to state that material fact "in order to make the statements made (in light of the circumstances in which they were made and within the overall context of the offer and sale or lease) not misleading...." 15 U.S.C.A. § 1703(a)(2)(B). Plaintiff argues that Thomas Haley's statement that no mobile

homes could be placed on plaintiff's lots was misleading in the overall context of the offer and sale, absent a statement that the restrictive covenants could be amended. This argument ignores that plaintiff had asked Haley a very specific question, and Haley's response that no mobile homes or house trailers were permitted was an accurate representation based on the restrictive covenants in effect at the time. At the time of this discussion Haley had no reason to believe that the covenants would be amended to allow mobile homes.

The nonmisleading character of this whole transaction is made even more clear by the repeated notices to plaintiff that he should study the restrictive covenants. The property report instructed plaintiff that he should read the covenants for himself. Plaintiff also signed several documents stating that he had read and received a copy of the restrictive covenants, although the Act does not require the developer to furnish a copy of the actual covenants to a buyer. Even if plaintiff did not receive a copy of the covenants, the fact that he signed the documents acknowledging receipt should have served as more notice that he should read the covenants.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). OIDC is "entitled to judgment as a matter of law" because plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The proper standard for making this determination "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) ..." *Id.*

Plaintiff's case must fail under section 1703(a)(1)(C) because the omitted statement of material fact was not "required to be stated...." 15 U.S.C.A. § 1703(a)(1)(C).

Plaintiff's case must also fail under section 1703(a)(2)(B) because as a matter of law it was not necessary to state the omitted material fact "in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading...." 15 U.S.C.A. § 1703(a)(2)(B).

The Interstate Land Sales Full Disclosure Act is designed to prevent deceptive trade practices by requiring developers to disclose material information. *Scenic Rivers*, 96 S.Ct. at 2433. The Act was not intended to supplant all responsibility on the part of the purchaser to examine the title of the lot about to be purchased.

Accordingly, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.